**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| TIME WARNER CABLE, INC., | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | C. A. No. 1:07-cv-067 MPT |
| GPNE CORP., | § | |
| | § | Jury Trial Demanded |
| Defendant. | § | |

**GPNE'S REPLY BRIEF IN SUPPORT OF ITS**
**MOTION TO DISMISS, STAY OR TRANSFER**

Defendant GPNE Corporation ("GPNE") moves the Court to Dismiss or Stay this action pursuant to the "first to file" rule, or in the alternative, transfer it to the Eastern District of Texas, Marshall Division pursuant to 28 U.S.C. § 1404(a) (1993).

## I.     INTRODUCTION

GPNE has filed a Motion to Stay, Dismiss or Transfer in this Court in favor of the first-filed action in the Eastern District of Texas. The Texas case is proceeding against Time Warner Cable, Inc. ("TWC"), Comcast Cable Communications LLC ("Comcast"), and Charter Communications, Inc. ("Charter"). Consequently, the first-to-file rule and the interest of judicial efficiency and economy require that GPNE's Motion to Dismiss, Stay or Transfer this case be granted.

## II.     STATEMENT OF FACTS

GPNE filed a patent infringement case in the Eastern District of Texas on January 31, 2007, alleging infringement of the '406 patent. GPNE Br. Ex. A. Two days later, on February 2, 2007, TWC filed an action in this Court seeking a declaratory judgment of noninfringement and

invalidity of the '406 patent.[1]  For the reasons delineated below, this Court should dismiss or stay this action pursuant to the "first to file" rule, or in the alternative, transfer it to the Eastern District of Texas, Marshall Division pursuant to 28 U.S.C. § 1404(a).

### III.    ARGUMENT

#### a.  Economy and justice dictate that this action be moved to Texas.

Of the three defendants in the Texas litigation, only TWC filed a declaratory judgment action.  Thus, because litigation is moving forward in Texas, it is in the interests of judicial economy to allow all cases involving the same technology and issues to proceed.  Section 1404(a) of 28 U.S.C. provides that "for the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

"Where related lawsuits exist, 'it is in the interests of justice to permit suits involving the same parties and issues to proceed before one court.'" *Cashedge, Inc. v. Yodlee, Inc.*, 2006 U.S. Dist LEXIS 50488 at *7 (D. Del. July 19, 2006) (quoting *Brunswick Corp. v. Precor Inc.*, 2000 U.S. Dist. LEXIS 22222 at *7 (D. Del. Dec. 12, 2000).

> "The economic waste involved in duplicating litigation is obvious.  Equally important is its adverse effect upon the prompt and efficient administration of justice.  In view of the constant increase in judicial business in the federal courts and the continual necessity of adding to the number of judges, at the expense of taxpayers, public policy requires us to seek actively to avoid the waste of judicial time and energy.  Courts already heavily burdened with litigation with which they must of necessity deal should therefore not be called upon to duplicate each other's work in cases involving the same issues and the same parties."

*Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 930 (3rd Cir. 1941).  Because judicial effort and resources will be expended in the Eastern District of Texas case, the suits involving like

---

[1] *Time Warner Cable, Inc. v. GPNE Corp.*, C.A. No. 07-cv-067-***

defendants who practice similar technology and are accused of infringing the same patent should also proceed in the Eastern District.

### b.  The Texas Litigation is the First Filed

As recognized by the Delaware courts, "the first-filed rule turns on which court first obtains possession of the subject of the dispute, **not the parties of the dispute**." *Schering Corp. v. Amgen Inc.*, 969 F. Supp. 258, 267 (D. Del. 1997) (emphasis added) (quoting *Advanta Corp. v. Visa U.S.A., Inc.*, 1997 U.S. Dist. LEXIS 2007 at *3 (E.D. Pa. Feb 19, 1997)); *see also Schreiber v. Eli Lilly & Co.*, 2006 U.S. Dist. LEXIS 13477 at *8–9 (E.D. Pa. Mar. 27, 2006); *National Foam Inc. v. Williams Fire & Hazard Control, Inc.*, 1997 U.S. Dist. LEXIS 16734 at *19 (E.D. Pa. Oct. 29, 1997) (deferring to the first-filed case even though plaintiff failed to name all appropriate defendants).  The *Schering* court held that the addition of a new party is irrelevant to the question of which court had first acquired subject matter jurisdiction and noted that a "relation back" analysis was unnecessary.  *Id.*  Further, the point of inquiry is the original Complaint, not the Amended Complaint.  *Id.*  Consequently, GPNE's amendment to the original complaint does not alter the fact that the Texas litigation was filed before this action.  Thus, the Texas litigation is the first filed action because it first obtained possession of the subject of the dispute, the infringement of the '406 patent, on January 31, 2007 with the filing of its original Complaint.

### c.  GPNE's Filing in the Eastern District of Texas Was Not Motivated By Forum Shopping

GPNE's decision to file in the Eastern District of Texas was based on the ability to establish jurisdiction over each defendant and the convenience of the parties.  Each Texas defendant operates a high speed internet system in the Eastern District of Texas, the basis for the alleged infringement.  "Although a party's incorporation in Delaware is not irrelevant to the

Court's decision, it is not dispositive. Where an alternative forum is more convenient and has more substantial connections with the litigation 'incorporation in Delaware will not prevent transfer.'" *APV North America, Inc. v. Sig Simonazzi North America, Inc.*, 295 F. Supp. 2d 393, 399–400 (D. Del. 2002) (quoting *Green Isle Partners, Ltd. S.E. v. Ritz Carlton Hotel Co.*, C.A. No. 01-202-JJF (D. Del. Nov. 2, 2001)). While it is true that each party was incorporated in Delaware, Time Warner Cable's headquarters are in Stamford, Connecticut, Comcast's headquarters are in Philadelphia, Pennsylvania, Charter's headquarters are in St. Louis, Missouri, and GPNE's headquarters are in Honolulu, Hawaii. Ex. B to GPNE Br. ¶¶ 1–4. TWC's corporate headquarters, corporate research and development facilities, and vendors are all located outside of Delaware. TWC Br. at 9. Accordingly, for the convenience of the parties and because all three defendants conduct business in different states, have their headquarters in different states, and would be required to travel regardless of whether this case was transferred or not, Texas plaintiff GPNE selected a centrally located forum, the Eastern District of Texas, where each Texas defendant operates a high speed online system. Thus, Texas plaintiff GPNE's choice of forum should not be disturbed and GPNE's Motion to Dismiss, Stay or Transfer should be granted.

## IV.    CONCLUSION

For the reasons outlined above and in GPNE's opening Brief, this Court should stay or dismiss this case in favor of the first-filed patent infringement case in the Eastern District of Texas. Alternatively, this Court should transfer this case under 28 U.S.C. 1404(a) for resolution in the Eastern District.

Richard K. Herrmann #405
Mary B. Matterer #2696
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801-1494
T: (302) 888-6800
rherrmann@morrisjames.com
mmatterer@morrisjames.com

ATTORNEYS FOR GPNE CORP.

OF COUNSEL:
Edward W. Goldstein
egoldstein@gfpiplaw.com
Corby R. Vowell
cvowell@gfpiplaw.com
GOLDSTEIN, FAUCETT & PREBEG, LLP
1177 West Loop South, Suite 400
Houston, Texas  77027
(713) 877-1515 – Telephone
(713) 877-1737    Facsimile

# EXHIBIT  N

LEXSEE 1997 US DIST LEXIS 2007



Positive
As of: Mar 22, 2007

**ADVANTA CORP., ADVANTA NATIONAL BANK U.S.A., and ADVANTA NATIONAL BANK, Plaintiffs, v. VISA U.S.A., INC. and MASTERCARD INTERNATIONAL, INC., Defendants.**

**CIVIL ACTION NO. 96-7940**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

*1997 U.S. Dist. LEXIS 2007*

**February 19, 1997, Decided**

**DISPOSITION:** [*1] Visa's Motion to Transfer this case to the United States District Court for the Northern District of California granted.

**COUNSEL:**

For ADVANTA CORP., ADVANTA NATIONAL BANK U.S.A., ADVANTA NATIONAL BANK, PLAINTIFFS: MATTHEW A. WHITE, EDWARD F. MANNINO, WOLF, BLOCK, SCHORR AND SOLIS-COHEN, PHILA, PA USA. DAVID L. COMERFORD, WOLF, BLOCK, SCHORR AND SOLIS-COHEN, PHILADELPHIA, PA USA.

For VISA U.S.A., INC., DEFENDANT: WILLIAM P. QUINN, JR., JAY H. CALVERT, JR., SARAH E. DAVIES, MORGAN, LEWIS & BOCKIUS, PHILA, PA USA. For MASTERCARD INTERNATIONAL, INC., DEFENDANT: C. CLARK HODGSON, JR., STRADLEY, RONON, STEVENS & YOUNG, PHILA, PA USA. MATTHEW MACG. BENNETT, STRADLEY, RONON, STEVENS & YOUNG, LLP, PHILA, PA USA.

**JUDGES:** Robert F. Kelly, J.

**OPINION BY:** Robert F. Kelly

**OPINION:**

MEMORANDUM

R.F. KELLY, J.

FEBRUARY 19, 1997

On November 27, 1996, Advanta Corporation, the parent company of Advanta National Bank U.S.A. and Advanta National Bank (collectively referred to as "Advanta"), filed the present action against Defendants Visa U.S.A., Inc. and Mastercard International, Inc. ("Mastercard"). Advanta alleges that efforts on the part of Visa and MasterCard to prevent Advanta from issuing a new credit card violates Sections 1 and 2 of the Sherman Antitrust Act. On December 12, 1996, Visa filed a Motion to Dismiss, Stay or Transfer the case to the United States District Court for the Northern District of California. n1 On February 14, 1997, this Court held a hearing on Visa's Motion. On the same day, the Court granted Visa's Motion and Ordered the Clerk of Court to transfer the case to the Northern District of California. This memorandum addresses the reasons behind that Order.

n1 On February 11, 1997, Mastercard joined in Visa's Motion to Dismiss, Stay or Transfer.

[*2]

**I. FACTS AND PROCEDURAL BACKGROUND**

Visa and Mastercard are each joint membership organizations comprised of thousands of member banks and financial institutions (over 95% of which are members in both organizations) which, like Advanta, issue credit cards. Advanta currently has over 8,100,000 credit

1997 U.S. Dist. LEXIS 2007, *

cards issued to more than 6,500,000 accounts, making it one of the largest card-issuing members of Visa and MasterCard.

On November 7, 1996, Advanta and American Express Company ("American Express") unveiled the "Rewards Accelerator Card." This credit card would allow Advanta Visa or Mastercard cardholders who have, or later obtain, an American Express card and are enrolled in the American Express Membership Rewards program to accrue additional Membership Rewards points through transactions on their Advanta Visa or Mastercard. These Membership Rewards points are then used to purchase a variety of travel, entertainment and merchandise products. On November 25, 1996, Visa brought suit against American Express in the United States District Court for the Northern District of California for trademark infringement, dilution and other common law torts. Since Advanta was a Visa [*3] member, Visa decided not to name Advanta in the suit. Instead, Visa instituted informal proceedings against Advanta under Visa's Rules and Regulations and ordered Advanta to cease and desist issuing its Rewards Accelerator Card by December 2, 1996.

On November 27, 1996, Advanta commenced the present suit alleging that the actions on the part of Visa and Mastercard to prevent Advanta from issuing the Rewards Accelerator Card violated Sections 1 and 2 of the Sherman Antitrust Act. Advanta also asserted a variety of state law claims against Visa and MasterCard. n2 After learning of the suit filed by Advanta against Visa and Mastercard in this Court, Visa amended its Complaint in the Northern District of California on November 29, 1996 to join Advanta as a defendant. Visa argues that Advanta's suit should be transferred to California because both actions arise from the same facts and raise the same questions. The sole basis for Visa's Motion to Dismiss, Stay or Transfer is the so-called "first-filed" rule.

n2 Specifically, Advanta alleged (1) that Visa and MasterCard should be estopped from enforcing their Operating Regulations restricting the use of their trademarks; (2) that Visa and MasterCard breached their respective contracts with Advanta; (3) that Visa defamed Advanta by publishing that the Rewards Accelerator Card purportedly violated Visa's then-existing rules and regulations; and (4) that Visa and MasterCard interfered with Advanta's prospective contractual relations.

[*4]

## II. DISCUSSION

Under the first-filed rule, "in all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." *E.E.O.C. v. University of Pennsylvania, 850 F.2d 969, 970 (3d Cir. 1988)* (quoting *Crosley Corp. v. Hazeltine Corp., 122 F.2d 925, 929 (3d Cir.1941)* (quoting *Smith v. M'Iver, 22 U.S. (9 Wheat.) 532, 6 L. Ed. 152,* (1824)), cert. denied, *315 U.S. 813 (1942)),* aff'd on other grounds, *493 U.S. 182 (1990).* This rule "encourages sound judicial administration and promotes comity among federal courts of equal rank." *E.E.O.C., 850 F.2d at 970.* Put another way,

one of the purposes of the first-filed rule is to ensure that litigants receive a single determination of their controversy, rather than multiple decisions, which may conflict and require several appeals in different circuit courts of appeal. Furthermore, the first-filed rule helps to avoid the waste involved in duplicative suits, and the delay in providing prompt administration of justice.

*Fischer & Porter Co. v. Moorco Intern. Inc., 869 F. Supp. 323, 325 (E.D. Pa. 1994).* Furthermore, the Third Circuit has held that [*5] invocation of the first-filed rule is the norm, not the exception and courts must be presented with exceptional circumstances before exercising their discretion to depart from the rule. *E.E.O.C., 850 F.2d at 979.*

In the E.E.O.C. case, confidential documents relating to the tenure review process for an Asian female professor who was denied tenure by the University of Pennsylvania were subpoenaed by the E.E.O.C. Before its response was due, the University of Pennsylvania brought suit against the E.E.O.C. in the United States District Court for the District of Columbia. Approximately six weeks later, the E.E.O.C. initiated an action in the Eastern District of Pennsylvania to enforce its subpoena. The University argued that the first filed rule required the Pennsylvania case to be dismissed in favor of the District of Columbia action.

The Third Circuit affirmed the trial judge's decision not to dismiss the E.E.O.C.'s suit, noting that the first-filed rule does not exist, and has not been applied, to give parties an incentive to fire a preemptive strike to avoid being hauled into what they perceive is an unfavorable forum. Furthermore, the authority granted district courts to [*6] enjoin proceedings, is "not a mandate directing wooden application of the first-filed rule without regard to rare or extraordinary circumstances, inequitable con-

1997 U.S. Dist. LEXIS 2007, *

duct, bad faith, or forum shopping." *E.E.O.C., 850 F.2d at 972.*

Advanta does not allege any bad faith or assert that Visa's suit in the District Court for the Northern District of California was the result of forum shopping. Rather, Advanta argues that the first-filed rule should not apply in this matter because the parties are not the same and the issues are different in the two actions. However, the first-filed rule is not limited in application to litigation involving only the same claims and the same parties. see E.E.O.C. (holding first-filed rule applies to court "which first has possession of the subject matter"); see also *Kerotest Mfg. v. C-O-Two Fire Equip. Co., 189 F.2d 31 (3d Cir. 1951)* (first-filed rule applies if subsequently filed action involves additional parties), aff'd, *342 U.S. 180, 96 L. Ed. 200, 72 S. Ct. 219 (1952).*

Advanta cannot avoid application of the first-filed rule simply by asserting that it was not initially a party to the earlier filed action. The first-filed rule turns on [*7] which court first obtains possession of the subject of the dispute, not the parties of the dispute. Otherwise, the first-filed rule would encourage rather than discourage duplicative suits by parties in Advanta's position that are aware of pending judicial actions or face related adminis-

trative proceedings. Advanta also argues that this case should not be transferred because the issues involved in the two actions are different. Specifically, Advanta maintains that the present action should not be transferred because none of the antitrust issues raised by Advanta in this action will be dealt with in the trademark infringement case in California. However, it is clear that Advanta could file an antitrust counterclaim or defense and, as such, antitrust issues would then be before the California Court as well as this one.

## III. CONCLUSION

In conclusion, the first-filed rule required that the present action by Advanta be brought before the United States District Court for the Northern District of California which had first possession of the subject of the dispute. Furthermore, there were no exceptional circumstances present here to warrant a departure from that rule. It is [*8] for these reasons that I entered the Order of February 14, 1997 granting Visa's Motion to Transfer this case to the United States District Court for the Northern District of California.

Robert F. Kelly, J.

# EXHIBIT   O

LEXSEE 1997 US DIST LEXIS 16734



Positive
As of: Mar 22, 2007

**NATIONAL FOAM, INC., BOOTS & COOTS LIMITED PARTNERSHIP, and
KENNETH BAKER v. WILLIAMS FIRE & HAZARD CONTROL, INC., CAUSE
CONSEQUENCE ANALYSIS, INC. and EMERGENCY ONE, INC.**

CIVIL ACTION NO. 97-3105

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA

*1997 U.S. Dist. LEXIS 16734*

**October 28, 1997, Decided
October 29, 1997, Filed, Entered**

**DISPOSITION:** [*1] Defendants' Motion to Dismiss Counts 2, 3, and 4 of Plaintiffs' Amended Complaint GRANTED; Defendants' Motion to Transfer Count 1 of the Plaintiffs' Amended Complaint GRANTED and Defendants' Motions to Dismiss for Lack of Personal Jurisdiction and Subject Matter Jurisdiction DENIED AS MOOT.

**COUNSEL:** For NATIONAL FOAM, INC., PLAINTIFF: EDWARD M. DUNHAM, JR., MILLER, DUNHAM & DOERING, PHILA, PA USA. MAURICE E. GAUTHIER, SIBLEY P. REPPERT, SAMUELS, GAUTHIER, STEVENS AND REPPERT, BOSTON, MA USA.

For WILLIAMS FIRE & HAZARD CONTROL, INC., DEFENDANT: MARC J. SONNENFELD, MORGAN, LEWIS & BOCKIUS, PHILA, PA USA. MARSHA Z. GERBER, LOUIS PAINE, SUE Z. SHAPER, BUTLER & BINION, LLP, HOUSTON, TX USA.

For EMERGENCY ONE, INC., DEFENDANT: PATRICK K. MC COYD, JONATHAN B. SPRAGUE, POST & SCHELL, P.C., PHILA, PA USA.

For BOOTS & COOTS LIMITED PARTNERSHIP, KENNETH BAKER, PLAINTIFFS: EDWARD M. DUNHAM, JR., MILLER, DUNHAM & DOERING, PHILA, PA USA. SIBLEY P. REPPERT, SAMUELS,

GAUTHIER, STEVENS AND REPPERT, BOSTON, MA USA.

For CAUSE CONSEQUENCE ANALYSIS, INC., DEFENDANT: MARC J. SONNENFELD, MORGAN, LEWIS & BOCKIUS, PHILA, PA USA.

**JUDGES:** HERBERT J. HUTTON, J.

**OPINION BY:** HERBERT J. HUTTON

**OPINION:** [*2] **MEMORANDUM AND ORDER**

HUTTON, J.

October 28, 1997

Presently before the Court are the Defendants' Motions to Dismiss, or, Alternatively, to Stay or Transfer to the Southern District of Texas, and the Plaintiffs' opposition thereto. For the following reasons, the Defendants' Motions are **GRANTED.**

**I. BACKGROUND**

Plaintiff, National Foam, Inc. ("National Foam"), is a Pennsylvania corporation based in Exton, Pennsylvania. Plaintiff, Boots & Coots Limited Partnership ("Boots & Coots"), is a Colorado limited partnership with its principal place of business in Houston, Texas. Plaintiff, Kenneth Baker ("Baker"), is an individual who resides in Pottstown, Pennsylvania. The defendants in

this matter are Williams Fire & Hazard Control, Inc. ("Williams") and Cause Consequence Analysis, Inc. ("CCAI"), both Texas corporations with their principal place of business in Vidor, Texas, and Emergency One, Inc. ("Emergency One"), a Florida corporation with its principal place of business in Ocala, Florida. The parties to this suit are in the business of inventing, manufacturing, selling, delivering, using or installing fire suppression systems.

National Foam is the [*3] owner of United States Patent No. *4,436,487* (the "*487* patent"), and CCAI is the owner of United States Patent No. *4,460,461* (the "*461* patent"). The *487* patent, issued March 13, 1984, discloses a foam liquid concentrate supply system. The system, powered by a concentrate pump, supplies the foam liquid concentrate to one or more water pump discharge outlets. The *461* patent, issued on February 3, 1987, is titled "Foam-Applying Nozzle." The nozzle is used to apply a foam-forming liquid from a hose.

Earlier this year, Williams determined that National Foam was infringing the *461* patent through National Foam's sale of its "Gladiator" nozzle. Therefore, on March 3, 1997, Williams' attorney sent a letter to National Foam's president, demanding an "immediate confirmation . . . that National Foam will cease and desist from any such making, offering to sell and selling of such a nozzle." On March 20, 1997, National Foam's attorney responded with a letter asserting that National Foam was not infringing the *461* patent. Williams' counsel responded by letter on April 21, 1997, rejecting National Foam's position and again demanding that National Foam cease and desist.

Meanwhile, on April [*4] 3, 1997, National Foam independently wrote its own cease and desist letter to Emergency One, claiming infringement of the *487* patent through Emergency One's use of one of Williams' products. On April 24, 1997, Williams' attorney responded in a letter denying infringement. National Foam received this letter on April 28, 1997, and filed the instant action before this Court the next day.

In its complaint, National Foam alleged that Williams and Emergency One were infringing the *487* patent in their use and sale of Williams' foam proportioning systems. National Foam also sought a declaratory judgment that, by its manufacture and sale of its "Gladiator" nozzle, it was not infringing the *461* patent. However, National Foam failed to name CCAI as a defendant, even though CCAI is the owner of the *461* patent.

On May 9, 1997, CCAI and Williams filed an action against National Foam, Boots & Coots, and Baker in the Southern District of Texas (the "Texas case"). Boots & Coots is allegedly a National Foam distributor, and

Baker is a former Williams employee who now works for National Foam. CCAI and Williams alleged that: 1) National Foam and Boots & Coots infringed CCAI's *461* patent; 2) National [*5] Foam was liable for false advertising, misappropriation of trade secrets, tortious interference, and unfair competition; and 3) Baker was liable for his violation of a duty not to disclose and for misappropriation of trade secrets. Moreover, defendant Williams sought a declaratory judgment against National Foam's patent infringement case before this Court.

On June 9, 1997, National Foam filed an amended complaint in the action before this Court. In its amended complaint, National Foam was joined by Boots & Coots and Baker. The plaintiffs sought a declaratory judgment stating their non-liability on all counts in the Texas case. Further, National Foam and Boots & Coots named CCAI as a defendant in their declaratory judgment request regarding the *461* patent. Finally, National Foam continued to allege that Williams and Emergency One infringed the *487* patent.

On July 14, 1997, CCAI filed its Motion to Dismiss, or Alternatively, to Stay or to Transfer, arguing that this Court lacks personal jurisdiction over CCAI, that this Court does not have subject matter jurisdiction over certain counts, and that the first-filed rule favors maintenance of this suit in Texas. Currently, the sole issue [*6] before this Court is whether this suit should be dismissed, stayed, or transferred to the Southern District of Texas. n1

n1 On September 23, 1997, this Court ordered that the Plaintiffs had until October 31, 1997 to respond to the Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Subject Matter Jurisdiction, but required the Plaintiffs to respond by September 29, 1997 to the Defendants' Motion to Dismiss or, Alternatively, to Stay or to Transfer to the Southern District of Texas.

## II. DISCUSSION

In the present motion, the defendants ask the Court either to dismiss, stay it or transfer venue to the Southern District of Texas. Plaintiffs oppose the motion, claiming that these alternatives are all improper.

### A. Counts 2, 3 and 4

In Counts 3 and 4 of the plaintiffs' complaint, National Foam and Baker seek a declaratory judgment stating their non-liability on all counts in the Texas case. In

Count 2, National Foam and Boots & Coots seek a declaratory judgment declaring [*7] their non-infringement of CCAI's '461 patent. Thus, this Court must discuss the applicability of the Declaratory Judgment Act to this matter.

### 1. Jurisdiction Under the Declaratory Judgment Act

The Declaratory Judgment Act, *28 U.S.C. § 2201* (1994), provides that:

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

*28 U.S.C. § 2201*(a) (emphasis added).

To demonstrate the presence of an actual controversy the declaratory plaintiff must show that (1) it has acted, or has made preparations to act, in a way that could constitute infringement, and (2) the patentee has created in the declaratory plaintiff a reasonable apprehension of suit for infringement. *Serco Servs. Co., L.P. v. Kelley Co., Inc., 51 F.3d 1037, 1038 (Fed. Cir. 1995)*. In the present case, this Court assumes the presence of an actual controversy for purposes of this motion.

However, the presence of an actual controversy, while providing authority, [*8] does not require the Court to accept jurisdiction over a declaratory judgment action. See *EMC Corp. v. Norand Corp., 89 F.3d 807, 813 (Fed. Cir. 1996)*, cert. denied, *136 L. Ed. 2d 730, 117 S. Ct. 789 (1997)*. The Act's "may" language gives the Court "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co., 515 U.S. 277, 115 S. Ct. 2137, 2143, 132 L. Ed. 2d 214 (1995)*. It grants the Court leeway in which to make "a reasoned judgment whether the investment of time and resources will be worthwhile." *Serco Servs., 51 F.3d at 1039*. Both the Supreme Court and the Federal Circuit have emphasized recently that the Act is an enabling act that provides the courts with the power, rather than the obligation, to grant relief. See *Wilton, 115 S. Ct. at 2144; EMC Corp., 89 F.3d at 813*. Accordingly, the district court's decision to accept or refuse jurisdiction is reviewed under an abuse of discretion standard. *EMC Corp., 89 F.3d at 813*

### 2. Motion to Dismiss

In their motion, the defendants argue that Counts 2, 3 and 4 of this action should be dismissed in favor of the subsequently filed Texas litigation. First, the defendants state that these [*9] counts were added in their present form only after the Texas suit was filed. Thus, the defendants contend that the Southern District of Texas should hear Counts 2, 3, and 4 of the instant matter before this Court, because the Texas suit is the "first-filed" action. Second, the defendants claim that National Foam's inadequate investigation, as evidenced by its failure to join CCAI in its original complaint, was caused by National Foam's concern with winning the "race to the courthouse." This, they claim, is an abuse of the Declaratory Judgment Act, *28 U.S.C. § 2201* (1994), which was not meant to provide a potential defendant with a means of forum-shopping.

National Foam responds that this declaratory judgment action is appropriate under the circumstances, and that the matter before this Court is the "first-filed" action. Therefore, the plaintiffs argue that the Court should continue to entertain it under the principle that in all cases of concurrent federal jurisdiction the first-filed action should take precedence.

#### a. The First-Filed Rule

As between a mirror-image declaratory judgment action and an affirmative patent infringement action, the general rule favors [*10] the forum of the first-filed action, whether or not it is the declaratory action. *Genentech, Inc. v. Eli Lilly & Co., 998 F.2d 931, 937-38 (Fed. Cir. 1993)*, cert. denied, *Regents of Univ. of Cal. v. Genentech, Inc, 510 U.S. 1140, 127 L. Ed. 2d 434, 114 S. Ct. 1126 (1994)* (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 96 L. Ed. 200, 72 S. Ct. 219 (1952))*. In the instant matter, however, the parties are in dispute over which suit constitutes the "first-filed."

##### (1) Count 2

As explained above, when National Foam initially filed its complaint seeking declaratory relief regarding the '461 patent, it failed to name CCAI as a defendant. CCAI, as the patent owner, is a necessary and indispensable party to the patent infringement action concerning the '461 patent. *Suprex Corp. v. Lee Scientific, Inc., 660 F. Supp. 89, 93 (W.D. Pa. 1987)*. After CCAI filed its patent infringement action against National Foam in Texas, National Foam amended its complaint to include CCAI as a defendant in its declaratory judgment request.

CCAI now argues that because it was a necessary and indispensable party, the Texas case should be considered the "first-filed" because it was the first to include CCAI as a party. Further, [*11] CCAI contends that when a party is added through an amended complaint,

the date of the amendment, rather than the date of the initial complaint, controls for first to file priority. Thus, CCAI reasons that the Texas action, filed prior to the amended complaint before this Court, is the first filed suit. The plaintiffs disagree, arguing that the date the complaint was originally filed with this Court controls. Thus, the issue before this Court is whether National Foam's amended pleading relates back to its initial filing of April 29, 1997.

The "first-filed rule, as its name indicates, is premised upon a priority of filing the complaint." *Peregrine Corp. v. Peregrine Indus., Inc.,* 769 F. Supp. 169, 172 (E.D. Pa. 1991). However, when an amendment to the complaint adds a party, the priority is unclear. Although "the date of the amendment seems to be controlling when the amendment adds a party," 8 Donald S. Chisum, *Chisum on Patents, § 21.02*[4][b] at 21-206 (emphasis added), this assumption "is open to question." *Ronson Art Metal Works, Inc. v. Brown & Bigelow, Inc.,* 105 F. Supp. 169, 173 n. 4 (S.D.N.Y.), aff'd, 199 F.2d 760 (2d Cir. 1952). n2

> n2 "This rule was assumed in the Kerotest case." 8 Donald S. Chisum, *Chisum on Patents, § 21.02*[4][b] at 21-206 n. 12 (citing *Kerotest Mfg. Co.,* 342 U.S. 180, 96 L. Ed. 200, 72 S. Ct. 219).

[*12]

Few courts have fully considered this issue in the context of a patent infringement case. The United States District Court for the Northern District of California discussed the applicability of *Federal Rule of Civil Procedure 15(c)(2)* to the first to file rule, but it recognized that:

> The Federal Circuit has yet to discuss the applicability of the relation back doctrine to patent infringement claims.

. . . .

[However, m]any of the cases dealing with relation back focus on whether fair notice was given to the opposing party. This interpretation agrees with the meaning underlying the intent of Rule 15.

*Applied Vision Inc. v. Optical Coating Lab., Inc.,* 1997 U.S. Dist. LEXIS 16306, No. CIV.A.97-1233, 1997 WL 601425, at *3-4 (N.D. Cal. Sept. 23, 1997) (finding Rule 15(c)(2) applicable to the first-to-file analysis).

In *Optima, Inc. v. Republic Indus., Inc.,* 1995 U.S. Dist. LEXIS 2213, No. CIV.A.94-3919, 1995 WL 72430 (E.D. La. Feb. 21, 1995), the United States District Court for the Eastern District of Louisiana confronted the issue

of whether the relation back doctrine applied to the first to file rule, when a plaintiff amended its complaint in order to add a party. Id. at *1. In Optima, Inc., the plaintiff [*13] repeatedly spoke with the president of and counsel to Republic Industries, Inc. ("Republic") concerning the plaintiff's belief that Republic was infringing the plaintiff's patent. Id. When the parties were unable to amicably settle their dispute, the plaintiff filed a complaint in the United States District Court for the Eastern District of Louisiana and served Republic's president. Id. However, the plaintiff mistakenly named "Dor-O-Matic," the trade name used by Republic, as the defendant. Id. By the time the plaintiff amended its complaint two weeks later, adding Republic as a defendant, Republic had filed a declaratory judgment action in the Northern District of Illinois. Id.

The Optima, Inc. court held that the plaintiff "was the first to file because its amended complaint relates back to the date of the original complaint." Id. (citing *Fed. R. Civ. P. 15(c)*). The court reasoned that because the plaintiff had corresponded with Republic's president and counsel regarding the allegedly infringed patent before filing suit and served its original complaint on Republic's president, Republic "should have known that 'but for a mistake concerning the identity of [*14] the proper party, the initial complaint would have been brought against it.'" Id. (quoting *Fed. R. Civ. P. 15(c)*). Further, the court stated that the plaintiff's "prompt amendment of its complaint has prevented any prejudice to Republic, and [the plaintiff] served the amended complaint within the required time under Rule 15(c)." Id. Thus, even though the plaintiff "kept Dor-O-Matic in the amended complaint as a precaution, instead of suing only Republic . . . [the plaintiff's] amendment conforms to Rule 15(c)(3). Id. at *2.

The facts in the instant case are similar to those in Optima, Inc. Before Williams and CCAI filed in the Southern District of Texas, it is highly probable if not certain that Williams, as CCAI's licensee, told CCAI about the complaint before this Court. Thus, this Court finds that CCAI "should have known that 'but for a mistake concerning the identity of the proper party, the initial complaint would have been brought against it.'" Id. (quoting *Fed. R. Civ. P. 15(c)*). Further, the "prompt amendment of its complaint has prevented any prejudice to [CCAI], and [the plaintiff] served the amended complaint within the required time under Rule [*15] 15(c)." Id. The sole distinguishing feature is that the Optima, Inc. plaintiff "kept Dor-O-Matic in the amended complaint as a precaution, instead of suing only Republic." Id. at *2. Thus, this Court must now consider whether the addition of CCAI, as a defendant and an indispensable party, and Boots & Coots, as a plaintiff, destroys the applicability of Rule 15(c)(3).

In *Wine v. EMSA Ltd. Partnership, 167 F.R.D. 34, 37-38 (E.D. Pa. 1996)*, the Honorable Judge Eduardo C. Robreno discussed the elements a court must consider when adding new defendants under the relation back provisions of Rule 15(c)(3):

As here, Plaintiff seeks to add new defendants, not new claims . . . .

. . . .

In deciding whether an amendment to add a new defendant relates back under Rule 15(c)(3), the focus of the Court is on whether the proposed new defendant had actual, constructive or imputed notice of the action within 120 days after the filing of the complaint or longer for good cause shown. *Fed. R. Civ. P. 15(c)(3)(A)*; Dean[v. Harold Ives Trucking], *1995 U.S. Dist. LEXIS 13082, 1995 WL 540519* at *2 [(E.D. Pa. Sept. 7, 1995)]; but see Cruz[v. City of Camden] *898 F. Supp.* [1100, 1115 (D.N.J. [*16] 1995)] (actual notice of existence of litigation required to add newly named defendants). Notice may be imputed to proposed new parties . . . "'when the original and added parties are so closely related in business or other activities that it is fair to presume the added parties learned of the institution of the action shortly after it was commenced.'" *Advanced Power Systems, Inc. v. Hi-Tech Systems, Inc., 801 F. Supp. 1450, 1456 (E.D. Pa. 1992)* (quoting *Hernandez Jimenez v. Calero Toledo, 604 F.2d 99, 101-02 (1st Cir. 1979))*.

*Wine, 167 F.R.D. at 37-38.*

Moreover, a similar analysis must be conducted when new plaintiffs are added. "In order to preserve this protection, the relation-back rule requires plaintiffs to show that the already commenced action sufficiently embraces the amended claims so that defendants are not unfairly prejudiced by these late-coming plaintiffs and that plaintiffs have not slept on their rights." *Nelson v. County of Allegheny, 60 F.3d 1010, 1014 (3d Cir. 1995)*, cert. denied, *116 S. Ct. 1266 (1996)*. Thus, "while a literal reading of Rule 15(c)(3) might suggest that the mistake element only applies to misnamed or misdescribed parties, [*17] 'the Rule is widely-understood to allow the addition of new parties that were never originally named or described.'" *Wine, 167 F.R.D. at 38 n. 7* (citations omitted).

Thus, the sole distinguishable feature in Optima, Inc. is immaterial. Although the amended complaint added Boots & Coots and CCAI, both CCAI and Williams would not be prejudiced in "'assembling evidence and constructing a defense.'" *Nelson, 60 F.3d at 1015* (quoting *Curry v. Johns-Manville Corp., 93 F.R.D. 623, 626 (E.D. Pa. 1982))*. This finding is premised on the fact that CCAI and Williams filed suit against National Foam and Boots & Coots in Texas, and thus have already started to prepare for a suit including CCAI and Boots & Coots. Further, as explained above, this Court finds that CCAI and Williams knew or should have known that, but for National Foam's mistake, CCAI would have been originally included in National Foam's original complaint. Therefore, the amended complaint adding Boots & Coots and CCAI falls within Rule 15(c)(3)'s ambit.

**(2) Counts 3 and 4**

Counts 3 and 4 before this Court were originally filed as Counts 3 through 7 in the Texas case. The defendants argue that the first [*18] to file rule therefore favors maintenance of this suit in Texas.

As stated above, the "Federal Circuit has yet to discuss the applicability of the relation back doctrine to patent infringement claims." *Applied Vision, Inc., 1997 U.S. Dist. LEXIS 16306, 1997 WL 601425*, at *3. However, the few courts that have confronted this issue have found that the relation back doctrine should apply to amended complaints including additional issues. See *Mattel, Inc. v. Louis Marx & Co., 353 F.2d 421, 424 (2d Cir. 1965)*, cert. dismissed, *384 U.S. 948 (1966)* (finding plaintiff's original complaint controlled for first to file priority, even though defendant's later complaint in another district first raised issues plaintiff later included in amended complaint); *Applied Vision, Inc., 1997 U.S. Dist. LEXIS 16306, 1997 WL 601425*, at *4 (applying relation back provision of Rule 15 to later amended complaint including additional issues); 8 Donald S. Chisum, *Chisum on Patents, § 21.02*[4][b] at 21-206 ("The priority rule relates to the date of the filing of the action between the parties, not the date when the issues were added by amendment of the pleadings or otherwise.").

This Court adopts the reasoning of these courts and holds [*19] that National Foam's original complaint controls for first to file purposes. The additional claims filed by the defendants in Texas raised similar issues to those presented in the ongoing dispute before this Court. Thus, the suit before this Court "was the first suit which made possible the presentation of all issues and which, by amendment of the complaint did raise all the substantial issues between the parties." *Mattel, Inc., 353 F.2d at 424.*

This Court finds that the plaintiffs' amended complaint filed on June 9, 1997 relates back to its initial filing of April 29, 1997. National Foam's original filing preceded the defendants' filing in Texas. Thus, the plaintiffs were the first to file this case.

**b. First-Filed Rule Exceptions**

The general rule favors the forum of the first-filed action, whether or not it is the declaratory action. *Genentech, Inc., 998 F.2d at 937-38* (citing *Kerotest Mfg. Co., 342 U.S. 180*). However, this presumption is not unrebuttable. *Novo Nordisk of North America, Inc v. Genentech, Inc., 874 F. Supp. 630, 632 (S.D.N.Y. 1995)*. Exceptions to the first-filed rule "are not rare, and are made when justice or expediency requires, [*20] as in any issue of choice of forum." *Genentech, 998 F.2d at 937*. Recognized exceptions include "when the choice of the forum of the first-filed case was the result of pure forum shopping, if the balance of convenience favors the second forum, or if the first filed action is against a customer of the alleged infringer and the second involves the infringer himself." *Novo Nordisk, 874 F. Supp. at 632*. The Court may also depart from the rule based on general considerations of "judicial and litigant economy" and "the just and effective disposition of disputes." *Serco Servs., 51 F.3d at 1039*. "Thus, 'the trial court's discretion tempers the preference for the first-filed suit, when such preference should yield to the forum in which all interests are best served.'" Id. (quoting *Genentech, 998 F.2d at 938*).

### c. Forum-Shopping Exception Applies

The purpose of the Declaratory Judgment Act is "to enable a person caught in controversy to obtain resolution of the dispute, instead of being forced to await the initiative of the antagonist." *Genentech, 998 F.2d at 937*. See *Serco Servs., 51 F.3d at 1039*. In many cases, the declaratory defendant is prepared [*21] to, and does, file its own affirmative suit shortly afterwards. Therefore, a district court cannot dismiss a proper declaratory action merely because affirmative infringement litigation is subsequently brought elsewhere. *Genentech, 998 F.2d at 938*. It may, however, dismiss the action where it is shown that the declaratory action was filed in anticipation of the impending litigation and motivated solely by considerations of forum shopping. See *Serco Servs., 51 F.3d at 1040; Novo Nordisk, 874 F. Supp. at 633*. Such a case falls outside the Act's purpose, in the patent context, of providing a remedy where a patentee delays suit in order to further damage the alleged infringer's business. See 10A Charles A. Wright, Arthur R. Miller, et al., Federal Practice and Procedure § 2761 (1983).

In Serco Services, the Federal Circuit upheld the Northern District of Texas' decision to dismiss a similar declaratory judgment action as anticipatory. Both the declaratory plaintiff, Serco, and the declaratory defendant, Kelley, manufactured loading dock equipment used in the trucking industry. *Serco Servs., 51 F.3d at 1037*. Kelley sent Serco a December 23, 1992, letter charging [*22] Serco with patent infringement, and giving Serco until February 1, 1993 to reply. *Id. at 1038*. Serco responded on January 29th with its conclusion that its product did not infringe. Id. Kelley took no action for over eight months. Finally, on September 8, 1993, Kelley sent Serco a letter that reiterated the charges and threatened suit if Serco did not comply by September 20th. Id. On the 20th, Serco notified Kelley that it continued to deny the charge of infringement, and that it had taken "the necessary action in Texas" to protect itself. Id. In fact, Serco had filed its declaratory judgment action in the Northern District of Texas on September 17th. Id. Therefore, on the 20th, Kelley filed its own patent infringement action in the Eastern District of Wisconsin. Id.

The Northern District of Texas dismissed Serco's declaratory judgment action in favor of Kelley's subsequent infringement action. *Id. at 1039*. The Court found that Serco's suit was filed in anticipation of Kelley's, and that the balance of convenience favored proceeding in the Wisconsin forum. The Federal Circuit affirmed, finding that the district court had not abused its discretion in relying [*23] on forum-shopping considerations, in combination with other factors, in its decision. *Id. at 1039-40*.

In the present case, the Court finds that National Foam, like Serco, filed its declaratory judgment action solely for forum-shopping purposes. As the plaintiffs' state in their Preliminary Opposition to the Motion to Dismiss, Stay, or Transfer, Williams initially demanded that National Foam cease and desist on March 3, 1997. In that letter, Williams' counsel informed National Foam that the "Williams HydroFoam Nozzle has long been available and marked with its patent number." Purvis Aff. Ex. A. National Foam's counsel responded on March 20, 1997, when it claimed that "the '461 patent is invalid, and not infringed by our client's product." Purvis Aff. Ex. B at 1.

After National Foam became aware of Williams' allegations and similar product, National Foam wrote a cease and desist letter to Emergency One, a Williams customer. In that letter, National Foam claimed that "Williams' HOT SHOT II Balanced Pressure Foam Proportioning System . . . infringes [National's] '487 patent." Purvis Aff. Ex. D at 1. On April 21, 1997, Williams' counsel responded to National Foam's March 20th letter, [*24] rejecting National Foam's position and again demanding that National Foam cease-and-desist. On April 24, 1997, Williams' counsel responded to National Foam's cease and desist letter to Emergency One, claiming that Williams' product did not infringe the '487 patent. Purvis Aff. Ex. E at 1. National Foam received this letter on April 28, 1997. National Foam filed its complaint with this Court the next day, alleging that Williams and Emergency One infringed its '487 patent. In fact, National Foam acted so quickly that it failed to in-

vestigate the *'461* patent to determine the owner. Thus, although National Foam sought declaratory relief concerning the *'461* patent dispute, it failed to include CCAI as a defendant.

As the communications between the parties indicate, National Foam threatened Emergency One only after Williams first sent National Foam a cease and desist letter. Thus, National Foam's strategy is clear. Instead of attempting to resolve its dispute with Williams, it chose to deny Williams' allegations while finding a Williams customer to threaten with a cease and desist letter of its own. While Williams' counsel sent three letters in an attempt to resolve this dispute, National [*25] Foam waited for a response from its own cease and desist letter to Emergency One. The day after Williams' counsel denied the allegations made against its customer by National Foam, National Foam filed the instant law suit. As stated previously, National Foam filed so quickly it failed to conduct research to determine the correct owner of the *'461* patent, instead mistakenly naming Williams as the owner.

Permitting this case to go forward would discourage similar efforts at informal resolutions and promote "irresponsible litigation." See *Davox Corp. v. Digital Sys. Int'l, Inc., 846 F. Supp. 144, 148 (D.Mass. 1993)* (dismissing declaratory judgment action filed for forum-shopping purposes alone). National Foam employed a different type of subterfuge as the Serco plaintiff, but its actions constitute a similar attempt to preempt the "natural plaintiff" in its choice of forum.

In Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., the Federal Circuit explained the type of situation that the Declaratory Judgment Act was meant to prevent:

[A] patent owner engages in a danse macabre, brandishing a Damoclean threat with a sheathed sword. . . . Guerrilla-like, the patent [*26] owner attempts extra-judicial patent enforcement with scare-the-customer-and-run tactics that infect the competitive environment of the business community with uncertainty and insecurity. . . . Before the Act, competitors victimized by the tactic were rendered helpless and immobile so long as the patent owner refused to grasp the nettle and sue. After the Act, those competitors were no longer restricted to an in terrorem choice between the incurrence of a growing potential liability for patent infringement and abandonment of their enterprises; they could clear the air by suing

for a judgment that would settle the conflict of interests.

*Arrowhead Indus. Water, Inc., 846 F.2d 731, 734-35 (Fed. Cir. 1988)*. Obviously, Williams never placed National Foam in this type of position when National Foam filed the instant suit. Instead, National Foam brought this action as an offensive tactic, in an attempt to ensure this litigation took place in Pennsylvania. Therefore, the Court finds that National Foam filed its declaratory action solely for forum-shopping purposes.

**d. Judicial and Litigant Economy Favors Dismissal**

Whether or not forum-shopping alone is [*27] a sufficient basis for dismissal, in this case considerations of judicial and litigant economy further counsel dismissal. See *Serco Servs., 51 F.3d at 1039*. Considerations relevant to judicial and litigant economy include "the convenience and availability of witnesses," the possible "absence of jurisdiction over all necessary or desirable parties, . . . the possibility of consolidation with related litigation, [and] considerations relating to the real party in interest." *Genentech, Inc., 998 F.2d at 938* (citations omitted). Further, considerations such as "the importance of conservation of judicial resources and the comprehensive disposition of litigation" may mandate dismissal. Id.

The location of the witnesses and documents, as well as the local interests, justifies dismissal of Counts 2, 3, and 4 in favor of the Texas suit. As the defendants argue, several witnesses relevant to Counts 2, 3, and 4 reside in Texas. The power of the Court to subpoena these witnesses may be necessary. Moreover, most of the documents and records relating to the *'461* patent appear to be located in Texas. Although the plaintiffs may have witnesses from outside Texas, the operative facts [*28] relating to Counts 2, 3, and 4 appear to invoke a greater need for witnesses from Texas than Pennsylvania. The plaintiffs argue that the witnesses related to the *'487* patent reside in Pennsylvania and Vermont, but the *'487* patent is relevant only to the first count. Thus, the location of relevant documents and necessary witnesses favors maintenance of this suit in the Southern District of Texas.

Moreover, "the importance of conservation of judicial resources and the comprehensive disposition of litigation" would "make it unjust or inefficient to continue the first-filed action" in the present case. *Genentech, Inc., 998 F.2d at 938*. First, this Court notes that CCAI has had very minimal contacts with Pennsylvania. Although this Court declines to rule on whether it has personal jurisdiction over defendant CCAI, it finds that litigation involving defendant CCAI would best be con-

ducted in the Southern District of Texas. Second, on August 29, 1997, the United States District Court for the Southern District of Texas ordered that motions by these parties before the court would not be decided until this Court decided the instant motion. n3 Thus, this case can be heard in Texas without [*29] interruption and without duplicative proceedings from this Court. Although duplicative proceedings could be avoided by enjoining the Texas action, doing so would unduly reward National Foam's forum-shopping conduct. Accordingly, this Court grants the defendants' motion to dismiss Counts 2, 3, and 4.

> n3 The only valid argument the plaintiffs raise to dispute these findings is that the Southern District of Texas might dismiss Baker as a plaintiff for lack of personal jurisdiction. However, the plaintiffs deliberately procured these circumstances by Baker's own motion to dismiss. The Court will not allow the plaintiffs to raise Baker's possible absence in the Texas litigation as grounds for continuing this litigation.

## B. Count 1

The sole issue remaining is whether to retain jurisdiction over Count 1 of the plaintiffs' complaint. In light of this Court's decision to dismiss Counts 2, 3, and 4, the Court also grants the defendants' motion to transfer Count 1 to the Southern District of Texas, pursuant [*30] to *28 U.S.C. § 1404*(a). n4 The Southern District is now the only forum where "all of the related patent claims pending between the parties can be resolved." *Davox Corp., 846 F. Supp. at 149.* The parties agree that the factual issues necessary to resolve the defendants' and plaintiffs' claims will substantially overlap. Defs.' Mot. to Dismiss or, Alternatively, Stay or Transfer at p. 22; Pls.' Prelim. Opp'n to Mot. to Dismiss, Stay, or Transfer at p. 51. "Since these cases, concerning similar technologies, will involve common discovery and witnesses, the cases should be heard in a single forum, to conserve judicial resources and to promote an efficient resolution of all the related matters pending between the parties." *Davox Corp., 846 F. Supp. at 149* (citations omitted). Therefore,

this Court transfers Count 1 of plaintiffs' amended complaint to the Southern District of Texas.

> n4 Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *28 U.S.C. § 1404*(a) (1993).

[*31]

## C. Motion to Stay

Given the Court's disposition on the Defendants' Motions to Dismiss and Transfer, it need not reach their alternative Motion to Stay. Likewise, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Subject Matter Jurisdiction is necessarily denied as moot.

An appropriate Order follows.

## ORDER

AND NOW, this 28th day of October, 1997, upon consideration of the Defendants' Motion to Dismiss, or, Alternatively, Stay or Transfer to the Southern District of Texas, and the Plaintiffs' opposition thereto, IT IS HEREBY ORDERED that:

1) the Defendants' Motion to Dismiss Counts 2, 3, and 4 of the Plaintiffs' Amended Complaint (Docket Nos. 20 and 27, Docket No. 21 is a copy of Docket No. 20) is GRANTED;

2) the Defendants' Motion to Transfer Count 1 of the Plaintiffs' Amended Complaint (Docket No. 20) is GRANTED; and

3) the Defendants' Motions to Dismiss for Lack of Personal Jurisdiction (Docket No. 17) and Subject Matter Jurisdiction (Docket No. 27) is **DENIED AS MOOT**.

BY THE COURT:

HERBERT J. HUTTON, J.

# EXHIBIT  P

LEXSEE 2006 US DIST LEXIS 13477



Cited
As of: Mar 22, 2007

**ALAN SCHREIBER, et al., Plaintiffs, v. ELI LILLY AND COMPANY, et al., Defendants.**

**CIVIL ACTION NO. 05-CV-2616**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

*2006 U.S. Dist. LEXIS 13477*

**March 27, 2006, Decided**

**COUNSEL:** [*1] For ALAN SCHREIBER, DR., ZABECOR PHARMACEUTICAL COMPANY, LLC, Plaintiffs: MARK LIPOWICZ, DUANE MORRIS, LLP, PHILADELPHIA, PA; MICHAEL M. MUSTOKOFF, DUANE MORRIS LLP, PHILA, PA.

For ELI LILLY AND COMPANY, Defendant: LISA M. SALAZAR, MCCARTER AND ENGLISH, LLP, PHILADELPHIA, PA.

For THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, Defendant: JOSEPH LUCCI, STEVEN D. MASLOWSKI, WOODCOCK WASHBURN LLP, PHILADELPHIA, PA.

**JUDGES:** LEGROME D. DAVIS, J.

**OPINION BY:** LEGROME D. DAVIS

**OPINION:**

MEMORANDUM

LEGROME D. DAVIS, J.

Presently before the Court is Defendant Eli Lilly and Company's ("Lilly") Motion to Dismiss or Transfer Claims Brought in Plaintiffs' Amended Complaint (Doc. No. 13), Defendant University of Pennsylvania's Opposition thereto (Doc. No. 22), Plaintiffs' Opposition thereto (Doc. No. 27), Defendant Lilly's Reply (Doc. No. 30) and Plaintiffs' Sur-Reply (Doc. No. 33). For the following reasons, this Court denies Defendant Lilly's Motion to Dismiss.

I. PROCEDURAL BACKGROUND AND FACTUAL HISTORY

Plaintiffs Dr. Alan Schreiber and ZaBeCor Pharmaceutical Company commenced this action against Defendant Lilly on June 2, 2005, alleging patent infringement, conversion, unjust enrichment, [*2] breach of contract, misappropriation of trade secrets, fraud and fraudulent inducement. Plaintiffs also request a declaratory judgment of inventorship and seek an accounting of Defendant Lilly's monetary gain. On June 17, 2005, plaintiffs amended the complaint to add the University of Pennsylvania ("Penn") as a defendant. n1 On August 23, 2005, Defendant Lilly filed the instant motion to dismiss.

n1 Plaintiff has stated that Penn is to be subsequently re-aligned as a party-plaintiff. Am. Compl. at 1.

In the early 1980s, Defendant Lilly developed a chemical compound named keoxifene. n2 After clinical trials failed to demonstrate that keoxifene was an effective treatment for breast cancer, Lilly considered keoxifene a "dead drug." Am. Compl. P 1. In early 1987, Dr. Schreiber, a biomedical researcher at Penn, obtained a sample of keoxifene from Lilly. Id. P 24. Dr. Schreiber discovered that keoxifene could be used to treat and prevent autoimmune and immune-mediated diseases. Id. P 26. In April 1987, Dr. [*3] Schreiber applied for a patent pertaining to the use of keoxifene for the treatment and prevention of rheumatoid arthritis and other autoimmune diseases. Id. P 27. In 1991, *United States Patent*

*No. 5,075,321* ("the *'321 patent*") was issued and as-
signed to Penn. Id. PP 7, 27. Penn licensed its rights in
the *'321 patent* exclusively to CorBec Pharmaceutical
Company, Inc. ("CorBec"). Id. PP 8, 29; see also Penn's
Answer PP 8, 29. CorBec's rights have been sublicensed
to ZaBeCor, including the right to bring patent infringe-
ment and other litigation. Am. Compl. PP 8, 30; see also
Penn's Answer PP 8, 30.

> n2 This chemical compound is also called
> raloxifene. Def. Lilly's Mot. at 4.

Plaintiffs allege that in 1987 and 1994, Dr. Schreiber
disclosed to Lilly, in confidence, his keoxifene inven-
tions and related confidential information, including the
use of keoxifene for the prevention and treatment of
autoimmune and immune-mediated diseases such as
rheumatoid arthritis and osteoporosis. Am. Compl. PP 3,
[*4] 36. Lilly and Dr. Schreiber agreed to maintain the
confidentiality of their discussions for use only in mutu-
ally agreeable research or further ventures between the
parties. Id. PP 34, 43. After proposals for continued col-
laboration failed, Dr. Schreiber and Lilly ended their
negotiations and terminated their relationship. Id. PP 52-
54.

Unbeknownst to plaintiffs, Lilly allegedly used the
information obtained from Dr. Schreiber to file a patent
application claiming a method of inhibiting bone loss
using raloxifene (keoxifene) and similar compounds. Id.
P 45. The patent application issued as *U.S. Patent No.
5,393,763* ("the *'763 patent*") on February 28, 1995. Id.;
Def. Lilly's Mot. at Ex. 2, *'763 Patent*. Plaintiffs also
allege that, based on the information obtained, Lilly filed
three additional patent applications. Am. Compl. PP 55-
57. One of the additional patent applications, which was
later issued as *U.S. Patent No. 5,478,847* ("the *'847 pat-
ent*"), was for the use of benzothiophenes, a class of
compounds that includes raloxifene, to inhibit bone loss.
Id. P 55. The other two patent applications were for a
method of inhibiting bone loss using raloxifene or simi-
lar [*5] compounds. Id. PP 56, 57. These patent applica-
tions were later issued as *U.S. Patent No. 5,457,117* ("the
*'117 patent*") and *5,534,527* ("the *'527 patent*"). Id. Lilly
did not disclose the *'321 patent* in connection with any of
the applications or identify Dr. Schreiber as an inventor
in any of the patent applications. Id. PP 46-47, 58-59.

The United States Food and Drug Administration
("FDA") approved raloxifene (keoxifene), under the
brand name EVISTA tm, for prevention of osteoporosis
in 1997 and treatment of osteoporosis in 1999. Id. PP 61,
62. EVISTA tm has become one of Lilly's leading drugs.
Id. P 63.

## II. DISCUSSION

This action arises from Defendant Lilly's alleged in-
fringement of the *'321 patent* and alleged misappropria-
tion of inventions and trade secrets related to keoxifene.
Defendant Lilly seeks dismissal of this action, arguing
that (1) this action should be dismissed pursuant to the
"first-to-file" rule because the first properly filed action
is pending in Indiana, (2) the Amended Complaint
should be dismissed pursuant to *Federal Rule of Civil
Procedure 12(b)(6)* because the Amended Complaint
fails to state [*6] a claim on which relief can be granted,
and (3) in the alternative, the action should be transferred
to Indiana pursuant to *28 U.S.C. § 1404(a)*.

### A. "First-to-File" Priority Rule n3

> n3 Since the issue of which action should
> have priority under the first-to-file rule "raises the
> issue of national uniformity in patent cases, and
> invokes the special obligation of the Federal Cir-
> cuit to avoid creating opportunities for dispositive
> differences among the regional circuits," this
> Court shall apply Federal Circuit law to this is-
> sue. *Genentech, Inc. v. Eli Lilly & Co., 998 F.2d
> 931, 937 (Fed. Cir. 1993)* (declining to apply
> Seventh Circuit law to an issue involving the
> "first-to-file" rule).

The "first-to-file" rule, which favors the forum of the
first-filed action, is a well-recognized doctrine of federal
comity. See *Genentech, Inc. v. Eli Lilly & Co., 998 F.2d
931, 937 (Fed. Cir. 1993)*, abrogated on other grounds by
*Wilton v. Seven Falls Co., 515 U.S. 277, 115 S. Ct. 2137,
132 L. Ed. 2d 214 (1995)*; [*7] *EEOC v. University of
Pennsylvania, 850 F.2d 969, 971 (3d Cir. 1988)*. As a
general rule, the first-filed suit has priority over subse-
quently filed suits. "Exceptions, however, are not rare,
and are made when justice or expediency requires."
*Genentech, 998 F.2d at 937*. If "sound reason [exists]
that would make it unjust or inefficient to continue the
first-filed suit," the district court has discretion to temper
the preference for the first-filed suit. *Id. at 938*.

### 1. First-Filed Action

In the instant matter, the parties dispute which action
is the first-filed action. Plaintiffs filed this action against
Defendant Lilly in the Eastern District of Pennsylvania
on June 2, 2005. Fifteen days later, on June 17, 2005,
plaintiffs amended their complaint to add Penn as a de-
fendant. On June 9, 2005, after plaintiffs filed this case
but before Penn was added as a defendant, Defendant
Lilly filed a declaratory judgment action against Dr.
Schreiber, ZaBeCor and Penn in Indiana.

Defendant Lilly argues that the first properly filed action is pending in Indiana. Def. Lilly's Mot. at 12-15. Defendant contends that the original complaint in this [*8] matter was defective in that it failed to name Penn, the entity having the true interest in the disputed intellectual property, as a party. Id. at 12. Since the action in Indiana was filed before the original complaint in this matter was amended, Defendant Lilly believes the declaratory judgment action in Indiana should be considered the "first-filed" case and that the instant action should be dismissed because it is the "second-filed" case. Id. at 13.

"The first-filed rule turns on which court first obtains possession of the subject of the dispute, not the parties of the dispute." *RJF Holdings III, Inc. v. Refractec, Inc., No.Civ. 03-1600, 2003 U.S. Dist. LEXIS 22144, at *6 (E.D. Pa Nov. 24, 2003)* (quoting *Advanta Corp. v. Visa U.S.A., No.Civ. 96-7940, 1997 U.S. Dist. LEXIS 2007, at *6-7 (E.D. Pa. Feb. 19, 1997)*); see also *Whelan v. United Pac. Indus., No.Civ. 02-2519, 2002 U.S. Dist. LEXIS 21827, at *7-8 (E.D. Pa. Nov. 1, 2002)* (deferring to a first-filed case even though the patent owners were not included as parties in the first-filed case); *Schering Corp. v. Amgen Inc., 969 F. Supp. 258, 267 (D. De. 1997)* [*9] (finding that the addition of a new party is irrelevant to the question of which court had first acquired subject matter jurisdiction and noting that "relation back" analysis is unnecessary. n4 This Court was first to obtain possession of the subject of the dispute.

> n4 Some district courts analyze whether an amendment to add a new party "relates back" to the date of the original pleading when determining whether the case is "first-filed." See *National Foam, Inc. v. Williams Fire & Hazard Control, Inc., No.Civ. 97-3105, 1997 U.S. Dist. LEXIS 16734, at *13-14 (E.D. Pa. Oct. 29, 1997)* (deferring to the first-filed case even though a defendant was not named in the initial complaint because the amended complaint related back to the date of the original pleading pursuant to *Fed.R.Civ.Proc. 15(c)(3)*); *Optima Inc. v. Republic Indus., Inc., 1995 U.S. Dist. LEXIS 2213, No. 94-3919, 1995 WL 72430, at *1-2 (E.D. La. Feb. 21, 1995)* (finding that the amendment to add a defendant related back to the date of the original complaint).

This Court agrees with the holdings in *RJF, Advanta, Whelan* and *Schering* that relation back analysis is unnecessary. However, even if relation back analysis was required, the first-filed case would still be in the Eastern District of Pennsylvania as the addition of Penn as a defendant would relate back to the date of the original com-

plaint. *Fed. R. Civ. Proc. 15(c)(3)*; see also *National Foam, 1997 U.S. Dist. LEXIS 16734, 1997 WL 700496, at *15-16* (noting that notice may be imputed to proposed new parties when the original and added parties are so closely related that it is fair to presume the added parties learned of the institution of the action shortly after it was commenced).

[*10]

Even though plaintiffs' original complaint failed to name the patent owner as a party to the action, "such an easily correctable oversight does not prevent this Court from deferring to the first-filed suit." *Whelan, 2002 U.S. Dist. LEXIS 21827, 2002 WL 31513432, at *2*; see also *National Foam, Inc. v. Williams Fire & Hazard Control, Inc., 1997 U.S. Dist. LEXIS 16734, No.CIV.A. 97-3105, 1997 WL 700496, at *5 (E.D. Pa. Oct. 29, 1997)* (deferring to the first-filed case even though plaintiff failed to name all appropriate defendants). Plaintiffs' amendment of their complaint does not alter the fact that this matter was filed before the action in Indiana was filed. This matter is the "first-filed" action.

2. First-to-File Rule Exceptions

As a general rule, the first-filed suit has priority. "Exceptions, however, are not rare, and are made when justice or expediency requires." *Genentech, 998 F.2d at 937.* If "sound reason [exists] that would make it unjust or inefficient to continue the first-filed suit," the district court has discretion to temper the preference for the first-filed suit. *Id. at 938.* Factors that may overcome the presumptive right of the first litigant to choose [*11] the forum include "the convenience and availability of witnesses, or absence of jurisdiction over all necessary or desirable parties, or the possibility of consolidation with related litigation, or considerations relating to the real party in interest." *Id.* Defendant Lilly argues that since the original action "was filed defectively in an effort to secure a tactical advantage, n5 was not served, and should logically have been brought elsewhere anyway," the Court has discretion to recognize the Indiana action as the "first-filed" action. Def. Lilly's Mot. at 13. This Court declines to do so. n6

> n5 Defendant Lilly has not provided any evidence in support of this contention.

> n6 The Court analyzes a number of the Genetech factors when it addresses Defendant Lilly's transfer of venue arguments.

B. Motion to Dismiss Pursuant to *Federal Rule of Civil Procedure 12(b)(6)*

    1. Legal Standard n7

        n7 When analyzing a purely procedural question not pertaining to patent law, "such as whether a *Rule 12(b)(6)* motion was properly granted," the rule of the regional circuit is applied. *Phonometrics, Inc. v. Hospitality Franchise Systems, Inc., 203 F.3d 790, 793 (Fed. Cir. 2000).*

[*12]

    Dismissal for failure to state a claim is appropriate when it clearly appears that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief. See *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957); Robb v. City of Philadelphia, 733 F.2d 286. 290 (3d Cir. 1984).* In deciding a motion to dismiss pursuant to *Rule 12(b)(6)*, all facts alleged in the complaint must be accepted as true. *Malia v. General Electric Co., 23 F.3d 828, 830 (3d Cir. 1994).* A claim may be dismissed when the facts alleged and the reasonable inferences therefrom are legally insufficient to support the relief sought. See *Pennsylvania ex rel. Zimmerman v. PepsiCo., Inc., 836 F.2d 173, 179-80 (3d Cir. 1988).*

    2. Material Appended to Defendant Lilly's Motion to Dismiss

    As a general matter, matters extraneous to the pleadings may not be considered. *In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1426 (3d Cir. 1997).* However, a document "integral to or explicitly relied upon in the complaint" may be considered without converting the motion to dismiss into one for summary [*13] judgment. n8 *Id.* (quoting *Shaw v. Digital Equipment Corp., 82 F.3d 1194, 1220 (3d Cir. 1996)); see also In re Rockefeller Center Properties, Inc. Securities Litigation, 184 F.3d 280, 287 (3d Cir. 1999).* "A court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guarantee Corp. v. White Consolidated Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).* The Third Circuit notes that the rationale behind these exceptions is that the primary problem raised by looking to documents outside the complaint-lack of notice to the plaintiff-is dissipated where the plaintiff has actual notice and has relied upon these documents in framing the complaint. *In re Rockefeller Center, 184 F.3d at 287.*

    n8 In its reply, Defendant Lilly suggests that this Court treat its motion to dismiss as a motion for summary judgment. Def. Lilly's Reply at 3 n.2. When a district court converts a motion to dismiss into a motion for summary judgment, it must provide the parties reasonable opportunity to present all material relevant to a summary judgment motion. *In re Rockefeller Ctr. Props. Sec. Litig., 184 F.3d 280, 287-88 (3d Cir. 1999).* Plaintiffs have not had sufficient notice or an opportunity to present all relevant materials. Therefore, this Court will not convert Defendant Lilly's motion to dismiss into a motion for summary judgment.

[*14]

    Defendant Lilly appended thirty documents to its motion to dismiss. See Def. Lilly's Mot. Plaintiffs note that seven of the attached documents, two of Lilly's patents, two letters and three patent reissuance applications, were referenced in the Amended Complaint. n9 Pls' Opp. at 12 n.7. Plaintiffs do not dispute the authenticity of these seven documents. Since these documents are undisputedly authentic, plaintiffs' claims are based on these documents, and the documents are explicitly relied upon in the complaint, this Court shall consider these seven documents when deciding the motion to dismiss.

        n9 These documents are appended in the following exhibits: Exhibit 2: Lilly *U.S. Patent No. 5,393,763*; Exhibit 3: Lilly *U.S. Patent No. 4,418,068*; Exhibit 5: November 11, 1993 letter from Lilly to Dr. Schreiber; Exhibit 13: April 2, 1987 letter from Penn to Lilly; Exhibit 25: patent reissuance application for the *'763 patent*; Exhibit 26: patent reissuance application for the *'117 patent*; Exhibit 27: patent reissuance application for the *'847 patent*.

[*15]

    Plaintiffs argue that the "overwhelming majority" of documents appended to Defendant Lilly's motion to dismiss are not referenced in the Complaint and are not the basis for any of plaintiffs' claims. Pls' Opp. at 12 n7. In large part, this Court agrees. Specifically, this Court finds that Exhibits 6-12, 14, 16, 20 and 21, which contain articles, abstracts, brochures, a press release and an excerpt from the Merck Manual of Diagnosis and Therapy, Exhibits 4 and 22, which contain communications between the parties, Exhibits 17-19, which contain patent prosecution histories, Exhibits 23-24 and 30, which relate to the Lilly v. Barr case pending in Indiana, and Exhibits 28 and 29, which contain SEC forms for Inkine Pharmaceutical Company, Inc., are not integral to or

explicitly relied upon in the complaint. Therefore, the documents contained in these exhibits will not be considered.

In addition to the exhibits plaintiffs admitted were referenced in the complaint, this Court will consider Exhibit 1, which contains the FDA-approved labeling for EVISTA tm, as plaintiffs' claims are, in part, based upon this document. This Court shall also consider Exhibit 15, which contains the 1987 [*16] Confidentiality Agreement, as plaintiffs' claims are based upon this document and the document is explicitly relied upon in the Amended Complaint. See Am. Compl. P 34. For both of these documents, the primary problem raised by considering documents outside the complaint-lack of notice to the plaintiff-is not present.

3. Dr. Schreiber's Work, Communications and Patent

Defendant Lilly argues that the entire Amended Complaint should be dismissed because Dr. Schreiber's work, communications and patent relate to the treatment of autoimmune disease, not post-menopausal osteoporosis. Def's Mot. at 15. Specifically, Defendant Lilly believes that the patent infringement claim and the inventorship claims should be dismissed.

a. Patent Infringement Claim

Defendant Lilly argues that no colorable claim for infringement can be advanced because post-menopausal osteoporosis is not an autoimmune disease within the scope of the properly construed claims of the Schreiber '321 patent. Id. at 16-17. The Federal Circuit has held that, in order to survive a motion to dismiss, "a patentee need only plead facts sufficient to place the alleged infringer on notice." Phonometrics, Inc. v. Hospitality Franchise Systems, Inc., 203 F.3d 790, 794 (Fed. Cir. 2000) [*17] (finding that a complaint that alleged ownership of the patent, named each individual defendant, cited the allegedly infringed patent, described the means by which the defendants allegedly infringed and pointed to the specific sections of patent law invoked contained enough detail to survive a motion to dismiss). The patent infringement claim in the Amended Complaint alleges that ZaBeCor has the exclusive worldwide right and license of the '321 patent and that Defendant Lilly has infringed the '321 patent by its manufacture, promotion, offering for sale, and sale of EVISTA tm . Am. Compl. PP 79-83. Plaintiffs have pled sufficient facts to put Defendant Lilly on notice of their patent infringement claims. Therefore, the patent infringement claim survives Defendant Lilly's motion to dismiss. n10

n10 Defendant Lilly also argues that "construction of the patent claims is a question of law

for the Court." Def. Lilly's Mot. at 16. While this is undeniably true, the proper time for this Court to address claim construction is not in a motion to dismiss. See Markman v. Westview Instruments, Inc., 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996).

[*18]

b. Inventorship claims

Plaintiffs allege that Dr. Schreiber is the sole inventor (or co-inventor) and sole owner (or co-owner) of Defendant Lilly's '763, '847, '117 and '527 patents. Am. Compl. PP 84-89. Defendant Lilly contends that the only methods of treating diseases with keoxifene even arguably invented by Dr. Schreiber are the methods of treating autoimmune diseases claimed in his patent. Def. Lilly's Mot. at 17. Defendant Lilly contends that since Dr. Schreiber's patent is fundamentally different from Lilly's patented inventions, which are directed to the treatment of post-menopausal osteoporosis, there can no legitimate claim of inventorship or co-inventorship. Id. at 17-18.

The Amended Complaint, however, alleges that in 1987, Dr. Schreiber, believing that he was communicating with Lilly under a confidentiality agreement, disclosed inventions and confidential information, "including use of keoxifene (raloxifene) for the prevention and treatment of autoimmune and immune-mediated diseases, including rheumatoid arthritis and osteoporosis, among others." Am. Compl PP 34-36. It also alleges that after the 1987 communications, Defendant Lilly focused on the confidential [*19] information disclosed, "including the Dr. Schreiber-discovered inhibitory effect of keoxifene (raloxifene) on bone loss and osteoporosis." Id. P 39. According to the Amended Complaint, on January 12, 1994, using the inventions and information disclosed in confidence by Dr. Schreiber, Defendant Lilly filed a patent application claiming a method of bone inhibiting loss using raloxifene and similar compounds. Id. P 45 (referring to the patent application for the '763 patent). The Amended Complaint then concludes that the patent application for the '763 patent was derived in whole or in part from the information disclosed by Dr. Schreiber to Defendant Lilly. Id. P 46.

The Amended Complaint makes similar allegations with regard to the '847 patent, the '117 patent and the '527 patent. Id. PP 55-60. Dr. Schreiber visited Lilly scientists on February 2, 1994. Id. P 49. At this meeting, Dr. Schreiber and Defendant Lilly allegedly discussed Dr. Schreiber's inventions and confidential information relating to raloxifene, including the fact that raloxifene could be used to treat autoimmune and immune-mediated diseases such as rheumatoid arthritis and osteoporosis. Id. An [*20] attorney who was present at these meetings

prosecuted Defendant Lilly's patents at issue. Id. P 60. The Amended Complaint alleges that the '847 patent, the '117 patent and the '527 patent were based on inventions and information Dr. Schreiber disclosed to Defendant Lilly in confidence. Id. PP 55-57.

Accepting all of the allegations contained in the Amended Complaint as true, this Court finds that the facts alleged adequately aver that Dr. Schreiber is the sole inventor (or co-inventor) and sole owner (or co-owner) of Defendant Lilly's '763, '847, '117 and '527 patents. Plaintiffs have adequately pled a claim for inventorship of the '763, '847, '117 and '527 patents.

### 4. Trade Secret and Associated State Law Claims

Defendant Lilly argues that the trade secret and associated state law claims should be dismissed because Dr. Schreiber's information was free of any confidentiality restriction by virtue of the acts of Dr. Schreiber and Penn. Def's Mot. at 18. Defendant Lilly contends that the information disclosed by Dr. Schreiber was published in 1987 and included in the text of the '321 patent, which was published in 1991. Id. Since the information has been published, Defendant [*21] Lilly believes that the confidentiality restrictions have been lifted. Id.

Plaintiff argues that Defendant Lilly's argument is premised on the "misleading suggestion that the Schreiber patent and/or publications describe all of the research that Dr. Schreiber performed using keoxifene and all of the information shared with Lilly." Pl's Opp. at 15. The allegations in the Amended Complaint, taken as true for the purpose of this motion to dismiss, provide support for plaintiffs' argument. The Amended Complaint alleges that Dr. Schreiber disclosed confidential information relating to the use of keoxifene for "autoimmune diseases and immune-mediated diseases and specifically for the treatment of osteoporosis." Am. Compl. P 48; see also id. PP 35-36, 49-50. Plaintiffs claims are sufficient to survive a motion to dismiss.

### 5. Patent Infringement Damage Claim

Defendant Lilly argues that the patent infringement damage claim should be dismissed on the grounds of laches because plaintiffs unreasonably delayed asserting the claim. n11 Def's Mot. at 18-19. Dismissal of a claim on the ground of laches requires that there be (1) unreasonable and unexcused delay in bringing the claim and [*22] (2) material prejudice to the defendant as a result of the delay. A.C. Aukerman Co. v. R.L. Chaides Construction Co., 960 F.2d 1020, 1028 (Fed. Cir. 1992). The strictures of Rule 12(b)(6) "are not readily applicable to a determination of laches," as the defense of laches usually requires factual development beyond the content of the complaint. Advanced Cardiovascular Systems, Inc. v. SciMed Life Systems, Inc., 988 F.2d 1157, 1161 (Fed.

Cir. 1993). The mere passage of time does not constitute laches. Id. Based on the information currently before the Court, it is not evident that plaintiffs' delay in bringing the claim was unreasonable or unexcused or that material prejudice resulted to Defendant Lilly. In order to determine whether plaintiffs' claim is barred by laches, this Court needs more information than is contained in the Amended Complaint and Defendant Lilly's admitted exhibits.

N11 Defendant argues that the unreasonable delay attributable to Penn's failure to assert any claim of infringement notwithstanding its knowledge of Defendant Lilly's activities should be imputed to ZaBeCor as the exclusive licensee of the Schreiber '321 patent. Def. Lilly's Mot. at 19.

[*23]

### 6. Statute of Limitations for State Law and Common Law Claims

Defendant Lilly argues that the state law and common law claims are barred by the statute of limitations. Def. Lilly's Mot. at 20. Specifically, Defendant Lilly contends that the conversion (Count III), fraud/constructive fraud (County VII), fraudulent inducement (Count VIII) and accounting (Count IX) claims have a statute of limitation of two years pursuant to 42 Pa.C.S.A. § 5524, that the unjust enrichment (Count IV) and breach of contract (Count V) claims have a statute of limitations of four years pursuant to 42 Pa.C.S.A. § 5525, and that the trade secret misappropriation claim based upon the Indiana Uniform Trade Secrets Act (Count VI) has a statute of limitations of three years. Id. Plaintiffs disagree with most of the statute of limitations cited by Defendant Lilly. Pl's Opp. at 16. Specifically, plaintiffs argue that the breach of contract claims have a ten year statute of limitations pursuant to Ind. Code 34-11-2-11 and that the rest of the claims, with the exception of Count VI, are covered by Indiana's six year statute of [*24] limitations, Ind. Code § 34-11-2-7. Id. In its reply, Defendant Lilly argues that, even if Indiana statutes of limitations apply, the state claims are still time-barred. n12 Def. Lilly's Reply at 2-3.

n12 Neither party fully addressed the statute of limitations issue. For these claims, state law determines the applicable statute of limitations. See Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938). The statute of limitations issue raises a choice-of-law question. A federal district court adjudicating state law claims must apply the choice-of-law rules of the forum state, in this case Pennsylvania. Klaxon

Case 1:07-cv-00067-MPT    Document 24    Filed 03/22/2007    Page 26 of 28

Page 7
2006 U.S. Dist. LEXIS 13477, *

*Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941).* The operative choice-of-law rule in Pennsylvania is found in Pennsylvania's borrowing statute, *42 Pa.C.S.A. § 5521,* which provides that "the period of limitation applicable to a claim accruing outside this Commonwealth shall be either that provided or prescribed by the law of the place where the claim accrued or by the law of this Commonwealth, whichever first bars the claim." *42 Pa.C.S.A. § 5521(b).*

[*25]

A motion to dismiss premised on statute of limitations grounds may only be granted if it is apparent from the face of the complaint that the cause of action was not brought within the limitations period. *Bethel v. Jendoco Construction Corp., 570 F.2d 1168, 1174 (3d Cir. 1978).* In the Amended Complaint, plaintiffs allege that Dr. Schreiber first learned about Lilly's litigation with Barr "about late 2002 or early 2003." Am. Compl. P 76. Thereafter, he learned that EVISTA tm was the same compound on which his discoveries were based and that the information disclosed in confidence to Defendant Lilly had been exploited by Lilly. Id. PP 77-78. Plaintiffs do not provide the specific time frame in which Dr. Schreiber, ZaBeCor or Penn learned of Defendant Lilly's actions. Viewed in the light most favorable to plaintiffs, the allegations in the Amended Complaint, on their face, demonstrate only that at some point after early 2003, Dr. Schreiber learned about Defendant Lilly's actions that give rise to plaintiffs' claims. This point could have been after June 2, 2003. Since the shortest possible statute of limitations is two years and plaintiffs filed their complaint on [*26] June 2, 2005, the allegations in the Amended Complaint are insufficient for this Court to determine whether the state law and common law claims were brought within the limitations period. n13

n13 This Court does not believe that plaintiffs should be rewarded for providing only minimal information about the timing of their discovery of Defendant Lilly's actions. However, this Court believes that minimal discovery will enable the parties to determine whether the state claims are time-barred on statute of limitations grounds.

C. Transfer of Venue n14

n14 Transfer of venue under *28 U.S.C. § 1404(a)* is governed by the law of the appropriate regional circuit. *Storage Tech. Corp. v. Cisco Sys., Inc., 329 F.3d 823, 836 (Fed. Cir. 2003).*

In the alternative, Defendant Lilly requests transfer of venue to [*27] the Southern District of Indiana pursuant to *28 U.S.C. 1404(a).* n15 Def's Mot. at 20-25. *Section 1404(a)* provides that "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *28 U.S.C. § 1404(a).* The burden of proving that transfer is appropriate is placed on the party moving for transfer, in this case Defendant Lilly. *Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970);* see also *Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995)* (citing Shutte). The Third Circuit has identified non-exhaustive list of public and private interest factors to determine whether the moving party has met its burden. *Jumara, 55 F.3d at 879-80.* Within this framework, a plaintiff's choice of forum demands paramount consideration and should not be lightly disturbed. *Shutte, 431 F.2d at 24.*

n15 Neither party disputes that venue is proper in the Eastern District of Pennsylvania.

[*28]

1. Private Interest Factors

The private interest factors help interpret the "convenience" language of *section 1404(a).* These private interest factors include: whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum). *Jumara, 55 F.3d at 879.* Defendant Lilly identifies three private interest factors that allegedly favor transfer to Indiana: the convenience of the witnesses; the ease of access to sources of proof and evidence in Indiana; and the fact that Indiana is the hub of activity for virtually all of the events underlying plaintiffs' claims. Def. Lilly's Mot. at 21-23. Plaintiffs argue that the convenience of the witnesses and the convenience of the parties both weigh against transfer to Indiana. Pls' Opp. at 19-20.

a. Convenience of the Witnesses

Defendant Lilly avers that "at least a dozen individuals who currently reside in [*29] Indiana" have potentially relevant information about plaintiffs' allegations. Id. at 22. Eight of Defendant Lilly's potential witnesses are current employees of Defendant Lilly and four

are former employees. Def. Lilly's Mot., Leeds Decl. P 7. In addition, the three inventors named on Lilly's patents all reside in Indiana. Id. Witnesses who are employed by a party carry no weight in the Jumara convenience analysis so this Court will not consider the eight potential witnesses employed by Defendant Lilly. See *Affymetrix Inc. v. Synteni, Inc., 28 F. Supp. 2d 192, 203 (D. Del. 1998).* Defendant Lilly notes that the witnesses, presumably the four former employees and the three inventors, "are unlikely to be compelled by subpoena to travel to Pennsylvania to testify before this Court." Def. Lilly's Mot. at 22. While this statement suggests that these witnesses are unavailable or unwilling to testify should the case remain in the Eastern District of Pennsylvania, Defendant Lilly has not provided any witness affidavits that support this contention. See *Jumara, 55 F.3d at 879* (looking to the convenience of witnesses, but only to the extent that "witnesses [*30] may actually be unavailable for trial in one of the fora"); *Lomanno v. Black, 285 F. Supp. 2d 637, 646-47 (E.D. Pa. 2003)* (citing witnesses' affidavits averring that the forum would be inconvenient).

Plaintiffs argue that some of plaintiffs' witnesses reside in this District. Pls' Opp. at 18-19. Specifically, plaintiffs argue that former members of Penn who will confirm the confidential communications with Lilly, former research assistants who will confirm Dr. Schreiber's research and discoveries and what was conveyed in confidence to Lilly, and the lawyers who prosecuted the relevant patent application are potential witnesses residing in this District. Id. Plaintiffs claims that its "crucial witnesses are entirely independent of Plaintiffs." Id. Defendant Lilly believes that plaintiffs' list of witnesses in this District consists of only two people: Dr. Schreiber and one employee from the Penn technology transfer office who was involved in the communications underlying the Amended Complaint. Def. Lilly's Reply at 5-6.

Plaintiffs have not provided any sworn testimony regarding the number of witnesses residing in this District so this Court is unable to determine [*31] the potential number of witnesses residing in Pennsylvania. While Defendant Lilly provided a list of witnesses, seven of which are non-employees who reside in Indiana, it did not provide sworn testimony that these witnesses were unavailable or unwilling to testify in this District. Given the evidence submitted, this Court cannot find that this factor weighs in either party's favor.

b. Ease of Access to Sources of Proof and Evidence

Defendant Lilly argues that at least 500,000 pages of relevant documents are located in Indiana. Def. Lilly's Mot. at 22. Consideration of the location of books and records is "limited to the extent that the files could not be produced in the alternative forum." *Jumara, 55 F.3d at 879.* Defendant does not allege that the relevant docu-

ments cannot be produced in the Eastern District of Pennsylvania. As a result, the location of these documents is irrelevant to the venue analysis.

c. Hub of Activity

Defendant Lilly argues that Indiana is the hub of activity for virtually all of the events giving rise to plaintiffs' claims. Def. Lilly's Mot. at 21-23. Defendant Lilly argues that the "center of gravity" for plaintiffs' patent infringement [*32] claim is in Indiana and that plaintiffs' inventorship, state and common law claims are based upon a series of meetings, communications, discussions and agreements with Lilly. Id. at 21-22. Penn argues that the claims arose in Pennsylvania, noting research at Penn that led to the inventions at issue and communications sent from, or sent to, parties that reside in this District. n16 Penn's Opp. at 5, 8-9. The Court believes that this factor weighs in favor of Defendant Lilly.

> n16 Plaintiffs do not address Defendant Lilly's contention that the claims arose in Indiana. In fact, plaintiffs argue that Indiana law should apply to the state and common law claims. See Pls' Opp. at 16.

d. Convenience of the Parties

Plaintiffs argue that the convenience of the parties as indicated by their relative physical and financial condition weighs in favor of letting the case remain in the Eastern District of Pennsylvania. Pls' Opp. at 19-20; see also *Jumara, 55 F.3d at 879.* Plaintiffs note that the Lilly [*33] is a multi-billion dollar corporation with interests and activities spanning the globe. Pls' Opp. at 19. Financially, Defendant Lilly is capable of shouldering the inconvenience of litigating in Pennsylvania. Plaintiffs, on the other hand, have limited resources. Id. Dr. Schreiber and ZaBeCor, both of which are domiciled in the Eastern District of Pennsylvania, argue that it would be a significant hardship if they were compelled to litigate their claims in Indiana. Id. at 1, 19-20. Penn is a Pennsylvania not-for-profit educational institution and would similarly be inconvenienced by litigation in Indiana. Penn's Opp. at 1. This factor weighs in favor of the current venue.

2. Public Interest Factors

The public interest factors help interpret the "interest of justice" language of *section 1404(a).* These public interest factors include: enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the [*34] applicable state law in diver-

sity cases. *Jumara, 55 F.3d at 879-80.* Defendant Lilly identifies two public interest factors that support a transfer to Indiana: judicial economy and the applicability of Indiana law. Def. Lilly's Mot. at 23-25; Def. Lilly's Reply at 8.

Defendant Lilly argues that the Lilly v. Barr case ("the Barr litigation") currently pending in the Southern District of Indiana involves many of the same legal and factual issues presented by Plaintiffs' Amended Complaint. n17 Def. Lilly's Mot. at 23. Defendant Lilly argues that since the Indiana court has already acquired considerable familiarity with the issues, judicial economy will be best served if this case is transferred to Indiana. Id. at 23. The Barr litigation involves seven Lilly patents and has been pending for three years in Indiana. Defendant Lilly does not contend that the instant case should be consolidated with the Barr litigation. Def. Lilly's Reply at 8. However, according to Defendant Lilly, the Barr litigation and the instant case both require construction of the claims of the *'763, '847* and *'117 patents*. Def. Lilly's Mot. at 23-24. Defendant Lilly also claims [*35] that the Schreiber *'321 patent* is "central to both cases." Def. Lilly's Reply at 8. Plaintiffs believe that Lilly overstates the legal and factual relationship between the instant matter and the Barr litigation. Pls' Sur-Reply at 7. Plaintiffs contend that there is no legally relevant overlap between the *'763, '847* and *'117 patents.* Pls' Opp. at 23.

n17 The Barr litigation was instigated when Barr sought FDA permission to sell a generic version of EVISTA tm . Def. Lilly's Mot. at 11. In the Barr litigation, Barr has asserted that seven of Lilly's patents, including the *'763, '847* and *'117 patents*, are invalid. Id. One of Barr's arguments that those patents are invalid is based upon its assertion that the Schreiber *'321 patent* anticipates the subject matter claimed in the *'763, '847* and *'117 patents*. Id. The plaintiffs in the instant matter are not involved in the Barr litigation.

This Court does not believe that the legal and factual issues overlap to such an extent that transfer on this [*36] basis is justified. See *Smithkline Beecham Corp. v. Geneva Pharms., Inc., 2000 U.S. Dist. LEXIS 1818, No. 99-2926, 2000 WL 217642, at *2 (E.D. Pa. Feb. 11, 2000)* (denying a motion to transfer when the case involved two patents not at issue in the Illinois case and discovery had already been completed in the Illinois case); *Max Planck Gesellschaft Zur Foederung Der Wissenschaften, E.V. v. General Elec. Co., 858 F. Supp. 380, 382 (S.D.N.Y. 1994)* (finding that familiarity of a court with a specific patent should not be given weight).

Defendant Lilly also argues that the case should be transferred to Indiana because Indiana law applies and the Southern District of Indiana routinely applies Indiana law. Def. Lilly's Reply at 8. Assuming *arguendo* that Indiana law applies, there is nothing to indicate that this Court would have difficulty applying Indiana law to this case. See *De Lage Landen Fin. Servs. v. Cardservice Int'l, Inc., 2000 U.S. Dist. LEXIS 15505, No.Civ.A. 00-2355, 2000 WL 1593978, at *2 (E.D. Pa Oct. 25, 2000)* ("federal judges routinely apply the law of various jurisdictions").

3. Balance of the Factors

Upon consideration of the parties' arguments, [*37] this Court is not persuaded that a transfer to the Southern District of Indiana is appropriate. Defendant Lilly has not made a convincing showing that the balance of factors outweighs the paramount consideration given to plaintiffs' choice of forum. Accordingly, this case will not be transferred.

III. CONCLUSION

Accordingly, Defendant Lilly's Motion to Dismiss or Transfer Claims is DENIED. An appropriate order follows.