## RICHARDS, LAYTON & FINGER
A PROFESSIONAL ASSOCIATION
ONE RODNEY SQUARE
920 NORTH KING STREET
WILMINGTON, DELAWARE 19801
(302) 651-7700
FAX (302) 651-7701
WWW.RLF.COM

FREDERICK L. COTTRELL, III
DIRECTOR

DIRECT DIAL NUMBER
302-651-7509
COTTRELL@RLF.COM

April 18, 2007

**VIA E-FILING**

The Honorable Mary Pat Thynge
United States Magistrate Judge
United States District Court
District of Delaware
844 King Street
Wilmington, DE 19801

> **Re:    Time Warner Cable Inc. v. GPNE Corp.**
> **Civil Action No. 07-67-MPT**

Dear Judge Thynge:

This firm, together with Kaye Scholer LLP, represents plaintiff Time Warner Cable Inc. ("TWC") in the above-referenced action. We submit this letter, in advance of the telephone conference scheduled for April 20, 2007 at 11:30 a.m., to describe the parties' dispute regarding the proposed Protective Order.

**Nature of the Dispute**

The point of contention between TWC and defendant GPNE Corp. ("GPNE") is whether GPNE's "in-house counsel" Mr. Ernest Bodner, a patent lawyer who is actively engaged in prosecuting GPNE's patent applications -- including applications related to the patent in suit -- should be granted access to proprietary and confidential technical information of TWC produced in this litigation.

TWC proposed that "[a]ny individual counsel, regardless of whether he or she is in-house counsel or outside counsel, who receives Confidential Information may not participate or be involved in any way in patent prosecution for the Receiving Party. . . ." (TWC's Proposed Order, ¶ 4(f); Exhibit A hereto). GPNE objected to this provision, and agreed only that confidential information about TWC's *future* products (designated as Attorneys' Eyes Only or "AEO Information") would be kept from Mr. Bodner. (See GPNE's Proposed Order, ¶¶ 2, 6). GPNE insisted that its patent prosecuting attorney be given access to TWC's confidential technical information concerning its current high-speed data networks.

**Summary of TWC's Position**

   This Court has repeatedly recognized the danger of providing a party's confidential technical information to the opposing party's patent prosecution attorneys. *Commissariat a l'Energie Atomique v. Dell Computer Corp.*, 2004 U.S. Dist. LEXIS 12782, at *4-11 (D. Del. 2004); *Motorola, Inc. v. Interdigital Tech. Corp.*, 1994 U.S. Dist. LEXIS 20714, at 13-14 (D. Del. 1994). As the Court has explained, "attorneys who receive confidential information and then later prosecute patents will have to distil and compartmentalize the confidential knowledge they have gained." *Motorola*, 1994 U.S. Dist. LEXIS 20714, at *13. "This creates a high risk of inadvertent disclosure . . . ." *Commissariat*, 2004 U.S. Dist. LEXIS 12782, at *8. If an attorney

     were to view [the opposing party's] voluminous confidential
     information and then later prosecute the patents [he] would have to
     constantly challenge the origin of every idea, every spark of
     genius. This would be a sisyphean task, for as soon as one idea
     would be stamped "untainted," another would come to mind. The
     level of introspection that would be required is simply to much to
     expect, no matter how intelligent, dedicated, or ethical [he] may
     be.

*Motorola*, 1994 U.S. Dist. LEXIS 20714, at *14-15.

   The danger that TWC's confidential information will be misused, inadvertently or not, is particularly high in this case. GPNE was formed just six months ago. Its address is the address of the Waikiki Beachside Hostel in Honolulu, Hawaii. It sells no products and provides no services. Its only "business," as best one can perceive, is to obtain patents and sue large companies for infringement. Reflecting this fact, its COO is Ernest Bodner, a Honolulu patent attorney. (Ex. B, C). (GPNE's counsel refers to Mr. Bodner as its "in-house attorney" although GPNE's Hawaii corporate filings refer to him as the COO). Mr. Bodner is personally involved in prosecuting GPNE's patent applications: indeed, as recently as November 29, 2006, Mr. Bodner attended an interview with the Patent and Trademark Office Examiner in Alexandria, Virginia regarding GPNE's Application No. 11/350,790, which has the same specification and prosecution history as the patent in suit. (Ex. D).

   Thus, GPNE proposes to give TWC's confidential technical information to a person whose very role is to draft patent claims to assert against TWC. The peril of misuse, inadvertent or not, is obvious.

   An additional ground to deny Mr. Bodner access to TWC's confidential information is that GPNE has designated him under Rule 26(a)(1) as a witness having discoverable information. *See Andrx Pharms., LLC v. GlaxoSmithKline, Plc*, 236 F.R.D. 583, 587 (S.D. Fla. 2006) ("the plaintiff's prosecution counsel should not be given access to the defendant's information that could consciously or unconsciously affect their testimony regarding the patent-in-suit, the invention covered by the patent-in-suit and how that relates to the defendant's accused product.").

For the foregoing reasons, it is respectfully submitted that TWC's confidential information produced in discovery should not be provided to GPNE's patent prosecution attorney, Mr. Bodner. We look forward to discussing this matter further with Your Honor at the April 20th teleconference.

Respectfully,

Frederick L. Cottrell, III (#2555)

cc:     Richard K. Herrmann, Esquire (via hand delivery)
        Corby R. Vowell, Esquire (via electronic mail)
        Califf Cooper, Esquire (via electronic mail)
        Joel Katcoff, Esquire (via electronic mail)
        David S. Benyacar, Esquire (via electronic mail)
        Daniel L. Reisner, Esquire (via electronic mail)

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TIME WARNER CABLE INC.,

         Plaintiff,

   v.

GPNE CORP.,

         Defendant.

Case No. 07-67-MPT

## [PLAINTIFF'S PROPOSED] PROTECTIVE ORDER

WHEREAS, Plaintiff Time Warner Cable Inc. ("TWC") and Defendant GPNE

Corp. ("GPNE"), through counsel, stipulate to entry of this Protective Order

("Order") pursuant to Fed. R. Civ. P. 26(c) to prevent unnecessary disclosure or

dissemination of confidential information; and

WHEREAS, the parties recognize that confidential information is being

produced for use in this civil action;

IT IS HEREBY ORDERED that the following provisions of this Order shall

govern the treatment of confidential information produced by a party ("Producing

Party") to any other party ("Receiving Party") in the course of this civil action:

1.     The term "Confidential Information" as used in this Order includes all

information and tangible things that constitute or disclose trade secrets or other

confidential or proprietary information of one of the parties. Confidential Information

may be contained in discovery information or materials produced or obtained in this

action by or through any means and by or through any person or entity. The

Confidential Information contained therein and all copies, recordings, abstracts, excerpts, analyses or other writings that contain, reveal or otherwise disclose such Confidential Information shall also be deemed Confidential Information.

2. Confidential Information shall be disclosed, disseminated and used by the Receiving Party only for purposes of litigation between the parties to this action pertaining to United States Patent No. 6,282,406. Except with the prior written consent of the Producing Party or upon prior order of this Court, Confidential Information shall not be disclosed except in accordance with the terms, conditions, and restrictions of this Order.

3. Produced documents, interrogatory responses, responses to requests for admission and other documents containing Confidential Information shall be marked by conspicuously affixing a legend, which includes the word "CONFIDENTIAL," on each page containing Confidential Information at the time such documents are produced or such information is disclosed (or on the cover or container of computer storage media, such as discs or tapes). The parties may designate material other than the produced documents as containing Confidential Information in the following manner:

(a) Testimony or information disclosed at a deposition that contains Confidential Information may be designated by indicating on the record at the deposition the portions of the testimony which contain such information that is to be made subject to the provisions of this Order. Alternatively, a Producing Party may designate testimony or information disclosed at a deposition, including exhibits, that contains Confidential Information by notifying all parties in writing, within fifteen

2

(15) days after the Producing Party's receipt of the transcript, of the specific pages
and lines of the transcript that contain such information. Whether or not designation
is made at the time of a deposition, access to each transcript (and the information
contained therein) of any deposition in its entirety shall be limited to outside counsel
of record and designated in-house counsel only, from the taking of the deposition
until fifteen (15) days after actual receipt of the transcript by the Producing Party, or
until receipt of the notice referred to in this paragraph, whichever occurs sooner. At
the expiration of the said fifteen (15) day period, unless notice hereunder to the
contrary is given at the time of the deposition or prior to the expiration of said period,
the entire transcript shall be deemed non-confidential.

      (b)    Confidential Information contained in any affidavits, briefs,
memoranda or other papers filed with the Court in this action may be designated as
Confidential Information by indicating on the face of such documents that one or
more parties considers them to contain such information.

      4.    A party or nonparty may designate as Confidential Information any
materials that qualify for protection under the standards developed under Fed. R. Civ.
P. 26(c). Subject to the provisions of paragraph 5 herein, material designated as
Confidential Information, and any summary, description or report of the information
contained in such materials, may be disclosed only to the following persons:

      (a)    the Court, members of the jury (should a jury be used for any
part of this litigation), persons employed by the Court, and stenographers transcribing
the testimony or argument at a hearing, trial or deposition in this action or any appeal
therefrom;

3

(b)     technical and damages consultants and experts who are not current employees of any party in this matter and who have been retained by counsel to provide assistance in this action, with disclosure only to the extent necessary to perform such work;

(c)     graphics, translation, design and/or trial consulting services, including mock jurors, retained by a party;

(d)     photocopy, document imaging and database services and consultants retained by counsel to set up, maintain and/or operate computer systems or litigation databases or to convert data for inclusion in such databases;

(e)     two (2) in-house counsel employed by TWC and two (2) in-house counsel employed by GPNE (each of whom shall be identified to the opposing party in writing prior to disclosure of Confidential Information to them); and two (2) paralegals and/or clerical employees assisting each of these individuals; and

(f)     the parties' outside counsel of record in this action and any other counsel for the parties that appears in this action, and their paralegal assistants, law clerks, stenographic and clerical employees who are assisting in the prosecution, defense and/or appeal of this action. Any individual counsel, regardless of whether he or she is in-house counsel or outside counsel, who receives Confidential Information may not participate or be involved in any way in patent prosecution for the Receiving Party, and such counsel may not discuss the information with anyone involved in patent prosecution for the Receiving Party.

4

5.   (a)   A party may exclude from a deposition any person who is not entitled to view Confidential Information when such information is the subject of examination.

(b)   No Confidential Information shall be revealed or disclosed, in whole or in part, directly or indirectly, to any individual described in subparagraphs 4(b)-(c) and (e) until that individual has been given a copy of this Order and has duly completed and signed an undertaking in the form attached hereto as Exhibit A, the original of which shall be retained, until the conclusion of this action including all appeals, by counsel for each party who intends to or does disclose to such individual any Confidential Information.

(c)   Before individuals under subparagraph 4(b) may have access to Confidential Information, the Receiving Party must submit to the Producing Party the individual's signed undertaking as well as the individual's curriculum vitae setting forth his or her name, address, qualifications and relevant work experience, including, but not limited to, the identity of any company in the telecommunications industry for whom said individual has consulted or worked during the last five (5) years. If the Producing Party does not object in writing, within five (5) business days from receipt of the undertaking, Confidential Information may then be disclosed to the retained consultant or expert. If timely objection is made, the parties shall attempt in good faith to resolve the disclosure issue. If the issue cannot be resolved, the Producing Party shall have fifteen (15) days from receipt of the undertaking to bring a motion to preclude the retained consultant or expert from viewing the Producing Party's

5

Confidential Information. If the Producing Party does not bring such a timely motion, Confidential Information may be disclosed to the retained consultant or expert.

        (d)     The disclosure of the identity of a consulting expert pursuant to subparagraph 5(c) will not be a waiver of any privilege or right to withhold from production that applies to communications or work product. Furthermore, the parties agree that by stipulating to the entry of this Protective Order, the parties do not intend to modify in any way the normal discovery rules applicable to consulting experts, or other agreements reached between the parties regarding such discovery.

        6.     Designation of Confidential Information shall constitute a representation that such information has been reviewed by an attorney for the Producing Party and that there is a valid basis for such designation. Confidential Information shall be maintained by the Receiving Party under the overall supervision of outside counsel. The attorneys of record for the parties shall exercise best efforts to ensure that the information and documents governed by this Protective Order are (i) used only for the purposes set forth herein, and (ii) disclosed only to authorized persons. Moreover, any person in possession of Confidential Information shall exercise reasonably appropriate care with regard to the storage, custody or use of such Confidential Information to ensure that the confidential or restricted nature of the same is maintained.

        7.     It is the intention of this Protective Order that the following categories of information are not, and therefore should not be designated as, Confidential Information: (a) any information that at the time of its disclosure in this action is part of the public domain by reason of publication or otherwise; (b) any information that

6

after its disclosure in this action has become part of the public domain by reason of

publication or otherwise through no act, omission or fault of the Receiving Party; (c)

any information that at the time of its disclosure in this action is rightfully in the

possession of the Receiving Party, its trial counsel or any expert retained by or for the

Receiving Party under no obligations of confidence to any third party with respect to

that information; or (d) any information that after its disclosure in this action is

rightfully received by the Receiving Party, its trial counsel or any expert retained by

or for the Receiving Party under no obligations of confidence or otherwise from any

third party having the right to make such disclosure. During the pendency of this

action, any disputes as to whether information is confidential under the terms of this

Order shall be resolved according to the procedure set forth in paragraph 8 hereof.

8.    If a party disagrees with any Confidential Information designation,

such party shall first make its objection known to the Producing Party and request a

change of designation. The parties shall first try to resolve of such dispute in good

faith on an informal basis. If the dispute cannot be resolved, the party challenging the

designation may request appropriate relief from the Court no sooner than five (5) days

following the service of a written notice of disagreement. The burden of proving that

information has been properly designated as Confidential Information is on the party

making such designation. Until a determination by the Court, the information in issue

shall be treated as Confidential Information and subject to the terms of this Order.

Any failure to object to any material being designated as Confidential Information

shall not be construed as an admission by any non-designating party that the material

constitutes or contains a trade secret or other confidential information.

7

9.    During the course of preparing for a deposition or testimony, unless

otherwise entitled to access under this Protective Order, a fact deponent/witness may

be shown Confidential Information from another party's documents strictly limited to

those documents which on their face reveal that they were authored or received by the

deponent/witness in the normal course of business and outside the context of this

litigation. This shall not preclude a Producing Party from showing documents that it

has produced to its own witnesses and deponents, regardless whether the Producing

Party has designated the document(s) it produced as Confidential, and regardless

whether such person was the author or a recipient of the document.

10.    At the deposition of a third party or former employee of a Producing

Party, such third party or former employee of a Producing Party may be shown

documents designated as Confidential only if the document was authored by or

received by that third party or former employee.

11.    Any person receiving Confidential Information shall not disclose such

information to any person who is not entitled to receive such information under this

Order. If Confidential Information is disclosed to any person not entitled to receive

disclosure of such information under this Order, the person responsible for the

disclosure will inform counsel for the Producing Party and, without prejudice to other

rights and remedies of any party, make a reasonable good faith effort to retrieve such

material and to prevent further disclosure by the person who received such

information.

12.    Written material constituting or revealing Confidential Information,

when filed with the Court in this action for any reason, shall be filed in sealed

8

envelopes or other appropriate sealed containers on which shall be endorsed the title

of this action, an indication of the nature of the contents of such sealed envelope or

other container, and a statement substantially in the following form:

CONFIDENTIAL

FILED UNDER SEAL PURSUANT TO COURT ORDER

Civil Action No. 07-67-MPT

13.    The Clerk of the Court is directed to place and maintain under seal in

accordance with this Order any such pleading or other document filed with or

delivered to this Court pursuant to Paragraph 12.

14.    Nothing herein shall prevent disclosure beyond the terms of this Order

if the party producing Confidential Information consents in writing to such disclosure,

or if the Court, after notice to all affected parties, orders or permits such disclosure.

15.    The inadvertent production in discovery of any privileged or otherwise

protected or exempted information, as well as the inadvertent production in discovery

of information without an appropriate designation of confidentiality, shall not be

deemed a waiver or impairment of any claim or privilege or protection including but

not limited to the attorney-client privilege, the protection afforded to work-product

materials or the subject matter thereof, or the confidential nature of any such

information, provided that the Producing Party shall promptly notify the Receiving

Party in writing when inadvertent production is discovered.  Upon receiving written

notice from the Producing Party that privileged information or work-product material

has been inadvertently produced, all such information, and all copies thereof, shall be

9

returned to counsel for the Producing Party and the Receiving Party shall not use such information for any purpose until further Order of the Court.

16.    Any violation of the terms of this Protective Order shall be punishable by money damages, interim or final injunctive or other equitable relief, sanctions, contempt of court citation, or such other or additional relief as deemed appropriate by the Court.

17.    Until such time as this Protective Order has been entered by the Court, the parties agree that upon execution by the parties, it will be treated as though it had been "So Ordered."

18.    Third parties who produce information in this action may avail themselves of the provisions of this Protective Order, and discovery materials produced by third parties shall then be treated by the parties in conformance with this Protective Order.

19.    Other Proceedings.  By entering this order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this order who becomes subject to a motion to disclose another party's information designated Confidential pursuant to this order shall promptly notify that party of the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

20.    In the event that any of the parties is (a) subpoenaed in another action, (b) served with a demand in another action to which it is a party, or (c) served with any other legal process by a person not a party to this litigation, and is requested to

10

produce or otherwise disclose discovery material that is designated as Confidential by another party, the party subpoenaed or served in accordance with this paragraph shall object to production of the Confidential material and shall give prompt written notice to the Producing Party. Should the person seeking access to the Confidential material take action against the party covered by this Order to enforce such a subpoena, demand or other legal process, it shall respond by setting forth the existence of this Order. Nothing in this Order shall be construed as requiring production of Confidential material covered by this Order.

     21.   (a)   Within sixty (60) days after filing of the final judgment in this action, or, if such judgment is appealed from, entry of a mandate affirming such final judgment, all Confidential Information shall be destroyed by all Receiving Parties or shall be returned to the Producing Party at the written election of the Producing Party which election shall be made within twenty days of the filing of the aforementioned final judgment or mandate. If any Receiving Party destroys any such Confidential Information, that party shall inform the Producing Party in writing.

         (b)   Notwithstanding the foregoing, one designated outside Delaware counsel and one designated outside out-of-state counsel of record for each party may maintain in its files one copy of each affidavit, affirmation, certification, declaration, brief, record on appeal, notice of motion, deposition transcript, exhibit to a deposition or affidavit (or the like), exhibit at a hearing or trial, pleading, discovery request, stipulation, correspondence between counsel for the parties, written response to a discovery request or any other document filed with the Court and the court transcript, consisting of or containing Confidential Information. Outside counsel of

11

record for each party shall be entitled to retain copies of any expert report containing any Confidential Information of the Producing Party, which is not in the public docket file. All such material shall remain subject to the terms of this Order.

22.    This Order may be amended with leave of the Court by the agreement of counsel for the parties in the form of a stipulation that shall be filed in this action.

23.    This Order shall remain in full force and effect until modified, superseded, or terminated on the record by agreement of the parties or by an Order of the Court.

24.    At the conclusion of the present action, the Court shall retain jurisdiction to enforce the terms of this Order.


SO ORDERED this _____ day of _____, 2007.


_____
HONORABLE MARY PAT THYNGE

RLF1-3134503-1
RLF1-3139279-1

EXHIBIT A
IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TIME WARNER CABLE INC.,

          Plaintiff,

    v.

GPNE CORP.,

          Defendant.

Case No. 07-67-MPT

I, _____, hereby declare that:

    1.    I have carefully read and understand the foregoing Protective Order (the "Order") of the United States District Court for the District of Delaware, in the above-captioned matter.

    2.    I agree that I will be bound by and will comply with all of the provisions of the Order and I will make no disclosures of Confidential Information to any person who is not permitted to have access to such Confidential Information by the Order.

    3.    Upon final determination of this action, I will destroy or return all Confidential Information pursuant to paragraph 21 of the Order.

    4.    I understand that a violation of this undertaking is punishable as a contempt of court and hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Order.

    5.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

RLF1-3134503-1
RLF1-3139279-1

Executed on: _____          _____
                                      [signature]


                                      _____
                                      [print or type name]

                                      Title:

                                      Business Affiliation:

                                      Address:

                                      Phone:

14

**EXHIBIT B**



Business Name Search and COGS
**Dept. of Commerce and Consumer Affairs**

**Certificate of Good Standing**

- Login
- Search
- Shopping Cart
- Authenticate a COGS

NOTE

If you want to purchase a Certificate of Good Standing, search for the company using the search page. Once you locate the company, view the company details. If the company/entity is in good standing, you will be able to purchase the COGS on that page.



Click Live Help icon to begin chat

# Business Information

Purchase a Certificate of Good Standing for this business:

Electronic COGS  **$7.50**
Print unlimited copies using your computer

Printed COGS  **$7.50 each**
Mailed to you or available for pickup

**General Information**

| Name | Value |
| --- | --- |
| Master Name | GPNE CORP. |
| Business Type | Foreign Profit Corporation |
| File Number | 36292 F1 |
| Status | Active |
| Place Incorporated | Delaware UNITED STATES |
| Formation Date | Dec 1, 2006 |
| Mailing Address | 2556 LEMON RD UNIT B101 HONOLULU Hawaii 96815 United States of America |
| Agent Name | CSC SERVICES OF HAWAII, INC. |
| Agent Address | PAUHI TOWER 1001 BISHOP ST STE 1600 HONOLULU Hawaii 96813 United States of America |

**Officers**

Certificate of Good Standing

| Name | Office | Date |
|------|--------|------|
| WONG, EDWIN | CEO/P/T/S/D | Dec 1, 2006 |
| BODNER, ERNEST | COO | Dec 1, 2006 |
| WONG, GABRIEL | D | Dec 1, 2006 |

### Transactions

| Date | Code | Remarks |
|------|------|---------|
| Mar 12, 2007 | Back Scanned Certificate | Back Scanned Certificate |
| Dec 1, 2006 | Certificate of Authority | Certificate of Authority |

Powered by *eHawaii.gov*

Copyright © 2000 - 2006 Hawai`i Information Consortium, LLC  All rights reserved

**EXHIBIT C**

 **United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

Boards & Counsel > OED > Patent Attorney/Agent Search > Search Results > Detailed Information

| | |
|---|---|
| **Last Name** | Bodner |
| **First Name** | Ernest |
| **Middle Name** | T |
| **Suffix** | |
| **Firm Name** | GPNE Corp |
| **Address** | 2556 Lemon Rd |
| **City** | Honlulu |
| **State/Province** | HI |
| **Postal Code** | 96815 |
| **Country** | US |
| **Primary Telephone** | 808-230-1466 |
| **Registration Number** | 55010 |
| **Attorney/Agent** | ATTORNEY |
| **Date Registered as Attorney** | 02/09/2004 |

**Data extracted on Mon Apr 16 15:37:02 EDT 2007**

| HOME | INDEX| SEARCH | eBUSINESS | CONTACT US | PRIVACY STATEMENT

Last Modified: 04/16/2007 EST

**EXHIBIT D**

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re Application | PATENT APPLICATION |
| Inventors:    Wong, et al. | |
| Appl. No.:    11/350,709 | Art Unit:    2618 |
| Confirm. No.: 1571 | |
| Filed:        February 9, 2006 | Examiner:    Yuwen Pan |
| Title: NETWORK COMMUNICATION SYSTEM | |
|        USING A SINGLE RESERVATION REQUEST | **Customer No. 23910** |
|        MADE WITH RANDOMLY GENERATED | |
|        INFORMATION TO IDENTIFY A NODE | |

## INTERVIEW SUMMARY FOR INTERVIEW CONDUCTED
## NOVEMBER 29, 2006

Commissioner for Patents
Alexandria, VA  22313

Sir:

  An interview between Examiner Yuwen Pan, the undersigned, and Ernest Bodner was held on November 29, 2006 at the U.S. Patent and Trademark Office in Alexandria, Virginia. Edwin Wong also participated in the interview by telephone.  The interview was conducted to further prosecution of this application by reducing the time required for the Examiner to review the significant amount of remarks by Applicants to map claim elements to the specification.

  Following the interview, the Examiner submitted an Interview Summary form (PTOL-413) stating the substance of the interview as, "response to office action has been discussed regarding to 112 issues," and indicating that an agreement was reached to overcome the Section 112 rejections.  Applicants agree with this Interview Summary provided by Examiner Pan.

1

Pursuant to the requirement of the Interview Summary form (PTOL-413), Applicants further submit the following substance of the interview.

In the interview, Examiner Pan initially indicated that he believed claim 1 involved frequencies such as $f_1$, $C_1$, $f_6$, etc. as pointed out in the Office Action Response. He requested that Applicants consider placing further limitations in the claims to identify the frequencies used.

In response, Applicants stated that the claims were not intended to cover specific frequencies. Instead, the frequencies were simply labeled in the specification to illustrate how frequencies changed to prevent interference between controllers. For instance, $f_1$-$f_4$ is the range of frequencies described for the first embodiment of the specification where a single controller is used to communicate with pagers. Common frequencies $C_1$-$C_4$ are used in the second embodiment during transfer of operation from the first controller to a second controller to prevent interference with frequencies $f_1$-$f_4$. Similarly, frequencies $f_4$-$f_8$ are used by the second controller once communication is established in the second controller over the common frequencies. Applicants pointed out that terms of claim 1 such as the first signal, request, second signal and data could be transmitted over one or more of these frequencies, and claim 1 was not otherwise intended to be limited by the frequencies utilized in any transmission.

Applicants further reviewed the proposed response, which was substantially filed as the actual response on November 30, 2006, and pointed out the mapping of the claim terms to the specification sections as required by the Office Action in response to the Section 112 rejection. Once satisfied with Applicants' remarks that claim 1 was not intended to be limited to specific frequencies, Examiner Pan agreed that Applicants' mapping was adequate to overcome the Section 112 rejections. Examiner Pan then suggested that Applicants could proceed to submit

2

the draft response provided in the interview as the actual response to overcome the Office

Action. In response, Applicants submitted the response on November 30, 2006.

Respectfully submitted,

Date: __December 15, 2006__            By: ___Thomas Ward___

                                            Thomas A. Ward
                                            Reg. No. 35,732

FLIESLER MEYER LLP
650 California Street, 14th Floor
San Francisco, California 94108
Telephone: (415) 362-3800

3