# Morris James LLP

Mary B. Matterer
302.888.6960
mmatterer@morrisjames.com

April 19, 2007

**VIA EFILING AND HAND DELIVERY**
The Honorable Mary Pat Thynge
USDC for the District of Delaware
844 King Street
Wilmington, DE  19801

    Re:    **_Time Warner Cable, Inc. v. GPNE Corp._**
              **Civil Action No. 07-67-MPT**

Your Honor:

    This firm, together with Goldstein, Faucett & Prebeg, LLP, represents defendant GPNE Corp. ("GPNE") in the above-referenced action.  We submit this letter to the Court to explain the parties' contentions regarding the proposed Protective Order in advance of the hearing scheduled for April 20, 2007 at 11:30 a.m.

### _Nature of the Dispute_

    The dispute over the proposed Protective Orders focuses on whether GPNE's in-house general counsel and chief operating officer, Mr. Ernest Bodner, should be granted access to "confidential information" of Time Warner Cable, Inc ("TWC").  GPNE's Proposed Protective Order allows TWC to protect material that is highly confidential as "attorney's eyes only" which GPNE has agreed is not accessible to in-house counsel of either party.  TWC's Proposed Protective Order only addresses confidential information and restricts access to in-house counsel not involved in patent prosecution.  TWC's Proposed Protective Order puts the parties on an unlevel playing field and takes advantage of GPNE's status as a small business which employs only a single in-house attorney.

### _Summary of GPNE's Position_

    This Court has recently held that "[a] party's designation as 'in-house counsel' cannot serve to automatically deny that party access to information deemed confidential."  _R.R. Donnelley & Sons Co. v. Quark, Inc._, 2007 U.S. Dist. LEXIS 424, at *2–3 (D. Del., Jan. 4, 2007); _U.S. Steel Corp. v. United States_, 730 F.2d 1465, 1467 (Fed. Cir. 1984).  Instead, "[t]he factual circumstances surrounding each individual counsel's activities, association or relationship with a party . . . must govern any concern for inadvertent or accidental disclosure."  _Id._  The critical inquiry is whether the attorney in question is in a position that creates a high risk of

inadvertent disclosure" of highly confidential information. *Motorola, Inc. v. Interdigital Tech. Corp.*, 1994 U.S. Dist. LEXIS 20714, at *6 (D. Del. Dec. 19, 1994). Consequently, the court should consider "whether the attorneys are involved in competitive decision making of the company and *should examine the risks and safeguards surrounding inadvertent disclosure of the protected information.*" *Affymetrix, Inc. v. Illumina, Inc.*, 2005 U.S. Dist. LEXIS 15482, at *6–7 (D. Del., July 28, 2005) (emphasis added).

GPNE is a small Hawaii based company whose business is the research and development of data networks and acquiring patent protection for their innovations. Contrary to TWC's statement, GPNE's "only business" is not to obtain patents and sue large companies for infringement, rather GPNE is a company established by the inventor Gabriel Wong to develop and protect his inventions. Furthermore, GPNE's Waikiki Beach Hostel – which is partly owned by inventor, and GPNE director and shareholder, Gabriel Wong – is only a temporary headquarters. In fact, GPNE is in the process of moving into its newly acquired office space at Manoa Innovation Center.[1] Unlike the big business of TWC, GPNE has only three officers: Edwin Wong, CEO; Ernest Bodner, COO and general in-house counsel; and Gabriel Wong, Director.

Ernest Bodner's role in GPNE, in addition to managing the day-to-day activities of GPNE, is to act as a liaison between GPNE's inventors and their outside patent prosecution attorney, Thomas Ward. GPNE has retained Thomas Ward of Fliesler Meyer LLP to prosecute all GPNE patents and has been prosecuting patents for GPNE and its predecessor since 2000. Ernest Bodner is also responsible for advising GPNE's board and investors. Accordingly, it is necessary for Mr. Bodner to have access to TWC's confidential information so that he may advise the GPNE board of directors and fulfill his duty to GPNE as COO and to manage outside counsel just as TWC's in-house counsel will have access to confidential information regardless of which protective order is adopted by the Court. Furthermore, GPNE is only seeking access to confidential information for Ernest Bodner, not highly sensitive attorney's eyes only information which the Court in *R.R. Donnelley* granted access to R.R. Donnelley's Chief Patent Counsel. Accordingly, the risk of inadvertent disclosure is de minimus, and Ernest Bodner should be given access to Confidential Information, especially with TWC's ability to protect highly sensitive documents by marking them attorney's eyes only.

The protective order proposed by GPNE provides two tiers of documents, specifically "confidential information" and "attorneys eyes only." GPNE's proposed protective order allows TWC to mark its confidential technical information as well as other highly confidential information as attorneys eyes only, which would exclude Ernest Bodner from viewing such information. Simply put, such a protective order gives TWC the appropriate protection and safeguards such that highly confidential information will not be at risk of inadvertent disclosure.

---

[1] 2800 Woodlawn Drive, Suite 223, Honolulu, Hawaii 96822

The Honorable Mary Pat Thynge
April 19, 2007
Page 3

**Morris James**LLP

      For the above delineated reasons, this Court should grant Ernest Bodner access to confidential information produced in litigation.

Respectfully,

*/s/ Mary Matterer*

Mary B. Matterer

cc: Frederick L. Cottrell, III, Esq. (via electronic mail)
     Joel Katcoff, Esq. (via electronic mail)
     David S. Benyacar, Esq. (via electronic mail)
     Daniel L. Reisner, Esq. (via electronic mail)

LEXSEE 2005 U.S. DIST. LEXIS 15482



Positive
As of: Apr 19, 2007

AFFYMETRIX, INC., Plaintiff, v. ILLUMINA, INC., Defendant.

Civil Action No. 04-901-JJF

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2005 U.S. Dist. LEXIS 15482

July 28, 2005, Decided
July 28, 2005, Filed

**SUBSEQUENT HISTORY:** Patent interpreted by *Affymetrix, Inc. v. Illumina, Inc.*, 2006 U.S. Dist. LEXIS 57805 (D. Del., Aug. 16, 2006)

**COUNSEL:** [*1] Jack B. Blumenfeld, Esquire and Maryellen Noreika, Esquire of MORRIS, NICHOLS, ARSHT & TUNNELL, Wilmington, Delaware. Of Counsel: Michael J. Malecek, Esquire, Daniel R. Reed, Esquire, George C. Yu, Esquire and Andrea L. Gross, Esquire of AFFYMETRIX, INC., Emeryville, California. Of Counsel for Amicus Filing: Susan Hackett, Esquire of the ASSOCIATION OF CORPORATE COUNSEL, Washington, D.C., for Plaintiff Affymetrix, Inc. and Third-Party The Association Of Corporate Counsel.

Richard K. Herrmann, Esquire of BLANK ROME LLP, Wilmington, Delaware. Of Counsel: Robert G. Krupka, P.C. of KIRKLAND & ELLIS LLP, Los Angeles, California; Mark A. Pals, Esquire and Marcus E. Sernel, Esquire of KIRKLAND & ELLIS LLP, Chicago, Illinois, for Illumina, Inc.

**JUDGES:** Farnan, District Judge.

**OPINION BY:** Joseph J. Farnan

**OPINION:**

OPINION

July 28, 2005
Wilmington, Delaware

Joseph J. Farnan

**Farnan, District Judge.**

Presently before the Court is a Motion For Entry Of A Protective Order (D.I. 23) filed by Defendant, Illumina, Inc. ("Illumina"), and a Cross-Motion For Entry Of A Protective Order (D.I. 26) filed by Affymetrix, Inc. ("Affymetrix"). For the reasons discussed, the Court will grant [*2] the Cross-Motion For Entry Of A Protective Order filed by Affymetrix and enter the protective order proposed by Affymetrix. The Court will grant Illumina's Motion to the extent it seeks entry of a protective order, but deny the Motion to the extent that it seeks entry of Illumina's proposed order.

**I. PARTIES' CONTENTIONS**

Both Illumina and Affymetrix agree that a protective order is required in this case. The parties' dispute centers on the degree of access which should be afforded to both parties' in-house counsel. n1

n1 The Association of Corporate Counsel ("ACC") has filed a Motion For Leave To File The Attached Amicus Submission In Connection With The Motions For Entry Of A Protective Order (D.I. 32). The ACC acknowledges that it does not know about or wish to become entangled in the factual arguments of the parties before the Court. However, the ACC writes to express its views against the disparate treatment of in-house litigators. No opposition has been filed to ACC's motion, and therefore, the Court will grant the Motion of ACC to file its amicus brief.

[*3]

By its Motion, Illumina contends that the Court should deny access to highly confidential and sensitive documents to Affymetrix's team of four in-house lawyers known as the "Litigation Unit." Illumina contends that disclosure to these lawyers is inappropriate because Affymetrix and Illumina are direct competitors. Illumina points out that Affymetrix's in-house attorneys report to Affymetrix's General Counsel, who is a "pipeline to management," and that at least one attorney is a registered patent lawyer who could prosecute patents on behalf of Affymetrix. According to Illumina, these circumstances present a risk that Illumina's confidential information could be used to cause it competitive harm. In addition, Illumina contends that the location of the Litigation Unit among other Affymetrix employees heightens the risk for inadvertent disclosure of highly sensitive information to people who are not authorized to receive that information under the protective order. Based on these circumstances, Illumina requests the Court to enter a protective order which is modeled after one Affymetrix agreed to when it was a defendant in prior litigation before the Court. n2

> n2 The template Illumina uses for its proposed protective order is one entered by the Court in OGT v. Affymetrixd, Inc., C.A. 99-348-JJF.

[*4]

In response, Affymetrix contends that Illumina's proposed protective order deprives Affymetrix of its counsel of choice. Affymetrix contends that it has selected its Litigation Unit to serve as trial counsel in this case and that Morris, Nichols, Arsht and Tunnel has only been retained as its local counsel. Affymetrix contends that it has incurred significant expense in setting up its Litigation Unit so that it would not have to engage outside counsel to represent it in patent actions. Affymetrix contends that its Litigation Unit is not involved in competitive decision making and that it has extensive procedures in place to minimize the risk of inadvertent disclosure of highly sensitive information. Specifically, Affymetrix points out that its Litigation Unit is located in Emeryville, California, a location physically separate form the rest of the Company's legal department and management in Sunnyvale, California. Affymetrix also details a number of policies and procedures agreed to in writing by the members of the Litigation Unit, including: (1) locking their office doors when they are not in their offices and maintaining a locked document storage room, (2) maintaining separate servers [*5] for the Litigation Unit's computers which are not accessible by the rest of the Company; (3) maintaining an electronic database, which only members of the Litigation Unit have access, to store confidential electronic documents; (4) prohibiting members of the Litigation Unit from participating in competitive decision-making, including discussion involving pricing, product design or patent prosecution strategy; (5) requiring the Litigation Unit members to advise the Company solely with regard to current or future litigation, and (6) keeping confidential documents received from other parties during litigation confidential so as to ensure that no one else at the Company has access to those documents. Affymetrix points out that its Litigation Unit has been a party to protective orders in various other cases, including cases in which Illumina's counsel, Kirkland & Ellis LLP, have participated.

The parties have also proposed various compromises to resolve this dispute, but these proposals have been rejected. Specifically, Illumina proposed limiting access to one, instead of four members of the Litigation Unit, and Affymetrix proposed allowing access to Illumina's sole in-house counsel, Ms. [*6] Espinosa, in exchange for access to Ms. Caulfield, Affymetrix's General Counsel. Affymetrix contends that limiting access to only one of its attorneys is not sufficient and would hamper its ability to prosecute this action using its chosen counsel. As for allowing access to Ms. Caulfield, Illumina contends that her role in the Company is intertwined with management, and therefore, she is not a proper party to have access to highly sensitive information. Illumina also suggests that it offered to allow access to the entire Litigation Unit in exchange for permitting Ms. Espinosa to have access, but Affymetrix contends that no such offer was ever made.

## II. DISCUSSION

Entry of a protective order is authorized by *Federal Rule of Civil Procedure 26(c)(7)*. The question of whether to allow in-house counsel access to materials under a protective order is governed by the factual circumstances surrounding each individual counsel's activities, association and relationship with a party, and not the attorney's status as in-house or outside counsel. *U.S. Steel Corp. v. United States, 730 F.2d 1465, 1468 (Fed. Cir. 1984)*. In determining [*7] whether in-house counsel should be permitted to access confidential information under a protective order, the court should consider whether the attorneys are involved in competitive decision making of the company and should examine the risks and safeguards surrounding inadvertent disclosure of the protected information. Id.

Although there is case law to support both parties' positions, the Court is persuaded in the circumstances of this case, that access under the protective order should be afforded to Affymetrix's Litigation Unit. Although the Litigation Unit has an "in-house" label, Affymetrix has implemented numerous safeguards to protect against inadvertent disclosure and to ensure that the Litigation

Case 1:07-cv-00067-MPT    Document 32-2    Filed 04/19/2007    Page 3 of 11

2005 U.S. Dist. LEXIS 15482, *                                              Page 3

Unit does not assume a role in the management or competitive decision-making activities of the Company. n3 See e.g. Boehringer Ingelheim Pharmaceuticals, Inc. v. Hercon Laboratories Corp., 1990 U.S. Dist. LEXIS 14075, 1990 WL 160666 (granting access under protective order to six in-house counsel, where court was confident that individuals were situated so that conflicting assignments could be rerouted to others); *Carpenter Technology Corp. v. Armco, Inc.*, 132 F.R.D. 24 (E.D. Pa. 1990) [*8] (granting access under protective order to senior staff attorney for patent licensee who had no involvement in competitive decision making of company, but denying access to attorney who had some indirect access to competitive decision making). In contrast to Affymetrix's Litigation Unit, Illumina's Ms. Espinosa has a role that is linked to competitive decision-making. In a letter to Affymetrix, Illumina represented that Ms. Espinosa is part of Illumina's management team and is involved with settling patent litigation and licensing. Based on her role at Illumina which crosses over into the competitive-decision making at Illumina, the Court concludes that Ms. Espinosa is not appropriately included as a party to the protective order. See e.g. *Carpenter Technology*, 132 F.R.D. at 28.

n3 Further, the Court understands that Affymetrix's Litigation Unit is serving as its trial counsel and that an outside firm, apart from the firm retained to serve as local counsel, is not being retained to actually litigate this case.

[*9]

### III. CONCLUSION

For the reasons discussed the Court will grant the Cross-Motion For Entry Of A Protective Order filed by Affymetrix and enter the protective order proposed by Affymetrix. The Court will grant Illumina's Motion to the extent it seeks entry of a protective order, but deny the Motion to the extent that it seeks entry of Illumina's proposed protective order.

An appropriate Order will be entered.

### ORDER

At Wilmington, this 28 day of July 2005, for the reasons set forth in the Opinion issued this date;

IT IS HEREBY ORDERED that:

1. Affymetrix's Cross-Motion For Entry Of A Protective Order (D.I. 26) is **GRANTED,** and the protective order proposed by Affymetrix will be entered separately by the Court.

2. Illumina' s Motion For Entry Of A Protective Order (D.I. 23) is **GRANTED** to the extent that it requests a protective Order, but **DENIED** to the extent that it seeks entry of its proposed order.

3. The Motion By Third-Party The Association Of Corporate Counsel For Leave To File The Attached Amicus Submission In Connection With The Motions For Entry Of A Protective Order (D.I. 32) is **GRANTED.**

Joseph J. Farnan [*10]  Jr.

UNITED STATES DISTRICT JUDGE

LEXSEE 1994 U.S. DIST. LEXIS 20714



Warning
As of: Apr 19, 2007

MOTOROLA, INC., Plaintiff, vs. INTERDIGITAL TECHNOLOGY CORPORATION, Defendant.

Civil Action No. 93-488-LON

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

*1994 U.S. Dist. LEXIS 20714*

**December 19, 1994, Decided**

**COUNSEL:** [*1] Jeffrey B. Bove, Esquire of Connolly, Bove, Lodge & Hutz, Wilmington, Delaware; Of Counsel: Gary M. Hoffman, Esquire and Howard N. Feldman, Esquire of Dickstein, Shapiro & Morin, Washington, D.C.; Attorneys for Plaintiff.

Richard K. Herrmann, Esquire of Bayard, Handelman & Murdoch, Wilmington, Delaware; Of Counsel: Robert G. Krupka, Esquire and Linda S. Resh, Esquire of Kirkland & Ellis, Chicago, Illinois; Attorneys for Defendant.

**JUDGES:** Joseph J. Longobardi, D.J.

**OPINION BY:** Joseph J. Longobardi

**OPINION:**

MEMORANDUM OPINION

December 19, 1994
Wilmington, Delaware

Joseph J. Longobardi

**I. NATURE AND STAGE OF THE PROCEEDINGS**

This suit involves patent claims relating to the mobile telephone industry. On October 8, 1993, Motorola filed a civil action seeking declaratory relief, Motorola, Inc., v. Interdigital Technology Corporation, Civil Action ("C.A.") No. 93-488- *LON, 1994 U.S. Dist. LEXIS 20714*. On October 12, 1993 Interdigital Technology Corporation, ("ITC"), filed a patent infringement claim arising out of the same patents, Interdigital Technology Corporation v. Motorola, Inc., C.A. No. 93-5430, in the Eastern District of Pennsylvania. On February 17, 1994, the Eastern District case was [*2] transferred to this Court and designated C.A. No. 94-73. On September 22, 1994, the two actions were consolidated, with 93-488 designated as the lead case.

Presently before the court is Motorola's letter of September 21, 1994, ("Motorola letter") and ITC's response letter of September 23, 1994, regarding the dual roles performed by the firm Dickstein, Shapiro & Morin ("DS&M"). DS&M is lead trial counsel for ITC in this action, and as such is entitled by the protective order to receive Motorola's confidential information. DS&M also prosecutes patents for ITC in the PTO. Motorola seeks to amend the protective order in this case to ensure that no DS&M attorneys who prosecute patent applications for ITC in the patents in suit have access to Motorola's confidential information. On September 28, 1994, both parties argued this issue before the Court.

**II. FACTS**

On October 8, 1993, Motorola filed its claim in this present action. Docket Item ("D.I.") 1. One week later, on October 15, 1993, DS&M became attorneys of record for several ITC patent applications, "including four United States continuation or divisional applications which take their parentage from the patents in suit." [*3] D'Amico Affidavit, at 2-3. Prior to October 15, 1993, Kenyon & Kenyon had been attorney of record for these patent applications.

On March 4, 1994, a protective order was entered in this case. D.I. 35. The protective order provided that DS&M was to have access to Motorola's confidential information. n1 The protective order did not specifically

Case 1:07-cv-00067-MPT   Document 32-2   Filed 04/19/2007   Page 5 of 11

Page 2
1994 U.S. Dist. LEXIS 20714, *

deny access to DS&M attorneys who prosecuted patent applications for ITC. The Court accepts as true Mr. D'Amico's representation that to date, none of the DS&M attorneys who have drafted claim revisions to any of the four continuation/divisional applications had access to Motorola's confidential information while preparing those revisions. D'Amico Affidavit P 6.

> n1 "Confidential Information shall be given, shown, disclosed, made available or communicated only to: . . . (a). . . (i) Partners and associates of Dickstein, Shapiro & Morin, and stenographic, clerical, and/or paralegal employees of those attorneys whose functions require access to Confidential Information."

[*4]

Motorola claims that, at the time the protective order was entered, Motorola "reasonably believed" that Kenyon & Kenyon was the law firm responsible for prosecuting any patent applications in this case. Motorola letter at 3. Moreover, Motorola alleges that on at least two occasions, DS&M concealed the fact that they were prosecuting patents for ITC. On February 9, 1994, both parties argued the issue of whether Mr. Bramson, in-house counsel for ITC, should have access to Motorola's confidential information under the protective order. Motorola implies that DS&M should have disclosed its patent prosecution representation at that time. Later, on August 10, 1994, ITC and Motorola entered into a stipulation which enabled two lawyers from Cushman, Darby & Cushman ("CD&C") (co-counsel for ITC) to obtain access to confidential information under the protective order. As a condition for this access, the two CD&C attorneys agreed "to refrain from prosecution of patent applications directed to mobile digital telephone communication equipment and processes during the pendency of this case and until one year after the conclusion of this litigation." D.I. 69. Again, Motorola implies that ITC should [*5] have disclosed its patent prosecution representation at this time.

ITC denies these allegations of improper concealment. Mr. Hoffman of DS&M states, "during the course of the parties' negotiations over Robert Bramson's access to certain Motorola documents, I believe I told counsel for Motorola that DS&M was prosecuting patents for ITC." Hoffman Affidavit at 4, P7. With respect to the CDC stipulation, Mr. Hoffman states that ITC consented to the stipulation in order to save time and expense, not because it agreed with Motorola's position. Hoffman Affidavit at 4-5, P8. n2 Moreover, counsel for ITC seem to have been guided at all times by their belief that no restriction exists on an outside counsel's ability to prosecute patent applications involving the technology related to the patents at issue. D'Amico Affidavit P9; Hoffman Affidavit P3; D.I. 86, at 109 (Mr. Bove stating that in his mind, there was always a clear distinction between inside and outside counsel).

> n2 Mr. Hoffman's statement is supported by Mr. Bove's letter of August 8, 1994 to Mr. Hermann of Bayard, Handelman & Murdoch (local counsel for Motorola): "So the record is clear, we are providing this [CD&C] Stipulation at Motorola's request in order to avoid burdening the Court with what we perceive is a improper position taken by Motorola." ITC letter, Exhibit G.

[*6]

For purposes of this opinion, the Court accepts as true the representations by ITC's various attorneys that there was no intentional concealment of DS&M's dual role. Nevertheless, an important issue is now before the Court which the Court is compelled to resolve.

### III. Discussion

In a patent case, maintaining the integrity of the protective order is an especially serious concern. "Courts dress technical information with a heavy cloak of judicial protection because of the threat of serious economic injury to the discloser of scientific information." *Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc., 682 F. Supp. 20 (D. Del. 1988)*. Motorola argues that its confidential information will be inadequately protected if DS&M attorneys who have access to the confidential information also prosecute ITC patents. Motorola fears that it is impossible for DS&M attorneys to compartmentalize the knowledge gained from reviewing Motorola's confidential documents and that the confidential knowledge gained will inevitably be used in prosecuting ITC's patent applications. Such use would violate the protective order's prohibition against use of the confidential information for [*7] any use other than the present litigation.

To supports its contention that there is no prohibition against outside counsel performing these dual roles, ITC relies upon In re Certain Amorphous Metal Alloys, No. 337-TA-143 (U.S.I.T.C. 1983)., and its progeny, *In re Certain Magnetic Switches, 1993 ITC LEXIS 143 (U.S.I.T.C. 1993)*. Amorphous Metal is factually similar to the present case. Two firms were acting as trial counsel for respondents and each firm had access to complainant's confidential information. The first firm assisted their client's in-house patent agents in preparing patent applications. The second firm did not prosecute their client's patent applications, but prosecuted patents for other clients in the same subject matter. Amorphous

Metal at 1 n.2. Complainant argued that these firms could not possibly respect the protective order and still zealously prosecute the patent applications.

The International Trade Commission allowed both firms to gain access to the confidential information. The Commission based its decision upon the following factors: an in-house/outside counsel distinction, faith in the attorneys ability to respect the protective order while [*8] pursuing future patent prosecutions, the lack of a present conflict, and the burden to the clients if the attorney's were disqualified from the litigation. While Amorphous Metal formulates and addresses the important issues present in this dispute, the Court declines to reach the Commission's result. To some extent this is due to factual differences between Amorphous Metals and the present case, but to some extent the Court simply disagrees with and declines to follow the Commission's reasoning.

"The goals of full disclosure of relevant information and reasonable protection against economic injury 'are in tension and each must be fairly balanced against the other.'" *Safe Flight, 682 F. Supp. at 23* (quoting *E.I. Du Pont de Nemours & Company v. Phillips Petroleum Company, 219 U.S.P.Q. 37 (D. Del. 1982)* (Latchum, J.)). After carefully weighing the relevant factors, which are discussed below, the Court holds that the DS&M attorneys who have received confidential information from Motorola under the protective order shall not prosecute any ITC patent applications relating to the broad subject matter of the patents in suit during the pendency of this case and until one year [*9] after the conclusion of the present litigation, including appeals.

A. The In-house/Outside Counsel Distinction

In their letter and at argument, Counsel for ITC present the Court with a general rule: courts split on whether inside counsel may receive confidential information while at the same time continue to prosecute patents, but outside counsel are always able to do both. In Amorphous Metal, the Commission gave its reasons for viewing in-house counsel differently from outside counsel:

> Traditionally and in the instant investigation, in-house counsel have been excluded from protective orders not because of an inherent untrustworthiness, but because of their close ties with the corporate client. Although in-house counsel serve as legal advisors, their employment often intimately involves them in the management and operation of which they are a part. The two roles of legal advisor and corporate official will often merge; when they do, the efficacy of the protective order is greatly diminished. Furthermore, because they are in regular contact with technical personnel, in-house counsel are in a significantly different position with regard to opportunities for inadvertent [*10] transmission of confidential information than are outside counsel.

Amorphous Metal at 5.

The Court declines to rest its decision upon a bright-line distinction between "in-house" and "outside" counsel. Access to confidential information "should be denied or granted on the basis of each individual counsel's actual activity and relationship with the party represented, without regard to whether a particular counsel is in-house or retained." *U.S. Steel Corp. v. United States, 730 F.2d 1465, 1469 (Fed. Cir. 1984)*. U.S. Steel was decided eight months after the Commission's opinion in Amorphous Metal, and involved a CIT decision which had relied upon a bright-line distinction to deny in-house counsel access to confidential information. The Federal Circuit held that "status as in-house counsel cannot alone create that probability of serious risk to confidentiality and cannot therefore serve as the sole basis for denial of access." *U.S. Steel, 730 F.2d at 1469*.

The critical inquiry is whether the attorney in question is in a position that creates a high risk of inadvertent disclosure. In discussing access for in-house counsel, courts look for involvement in competitive [*11] decision making or scientific research in determining whether an individual would have a difficult time compartmentalizing his knowledge. *Carpenter Technology Corp. v. Armco, Inc., 132 F.R.D. 24, 27-28 (E.D. Pa. 1990)* (granting access to one individual and denying access to another individual based upon involvement in competitive decision making and scientific research); *U.S. Steel Corp. v. United States, 730 F.2d 1465, 1468 (Fed. Cir. 1984)* (discussing the need to retain outside counsel to gain access to confidential information if in-house counsel is involved in competitive decision making). These are activities which define the scope and emphasis of a client's research and development efforts. The process of prosecuting patent applications also involves decisions of scope and emphasis, as was argued by Mr. Krupka at the September 28 hearing: "They can make the claims read on new products and new directions where we project sales to be most critical. And they can forget about the ones that relate to products that are going to die." D.I. 86, at 126. n3

---

n3 Amorphous Metal did not address this aspect of the patent prosecution process. The

Case 1:07-cv-00067-MPT    Document 32-2    Filed 04/19/2007    Page 7 of 11

Page 4
1994 U.S. Dist. LEXIS 20714, *

Commission was satisfied that no danger existed because the outside counsel had no direct contact with the client's technical personnel. Amorphous Metal at 6.

[*12]

Moreover, this court has implied in the past that prosecution of patents could be grounds for denying access. In *Safe Flight Instrument Corp. v. Sundstrand Data Control Inc., 682 F. Supp. 20 (D. Del. 1988)* (Roth, J.), the Court denied plaintiff's request that defendant's in-house counsel be denied access: "The defendant has represented to this Court that its in-house counsel neither conduct scientific research nor prosecute patents. These attorneys simply do not face [plaintiff's president's] prospect of having to distil one's own thoughts from a competitor's thoughts during the course of future . . . work." n4 Id. The court also relied upon the fact that defendant's in-house counsel would be segregated to avoid "the possibility of conscious or unconscious abuse of confidential information." *Id. at 23.*

n4 The Court had previously denied Plaintiff's request that Plaintiff's President be granted access because of the President's heavy involvement in research and decision making. *Safe Flight, 682 F. Supp. at 22.*

[*13]

There can be no question that DS&M attorneys who receive confidential information and then later prosecute patents will have to distil and compartmentalize the confidential knowledge they have gained. The inquiry must shift, therefore, to the dangers of inadvertent disclosure and the possible protections that may exist against such disclosure.

B. Inadvertent Disclosure

DS&M attorneys are prosecuting patents that are directly at issue in the present litigation. DS&M does not deny that it is theoretically possible for them to abuse the confidential information received, but argue that they understand their ethical duty and will act in conformance with it. The Commission adopted this position in In re Certain Amorphous Metal Alloys, No. 337-TA-143, at 3 (U.S.I.T.C. 1983): "In the event that a conflict is posed as a result of knowledge gained under a protective order, we would expect that counsel would refer the matter to other counsel. We therefore believe that it is appropriate to presume that respondents' counsel will respect the integrity of the confidential information released under a protective order."

The Court does not question the ethics of the DS&M attorneys, [*14] nor does it doubt that DS&M attorneys would respond appropriately if a conflict were "posed" to them. The issue is not deliberate disclosure, however, but inadvertent disclosure. In Safe Flight, the Court denied Plaintiff's President access to defendant's confidential information because of the dangers posed by inadvertent disclosure. "Accepting that [plaintiff's president] is a man of great moral fiber, we nonetheless question his human ability during future years of research to separate the applications he has extrapolated from [defendant's] documents from those he develops from his own ideas." *Safe Flight, 682 F. Supp. at 22.*

"Inadvertence, like the thief-in-the-night, is no respecter of its victims. Inadvertent or accidental disclosure may or may not be predictable. To the extent that it may be predicted, and cannot be adequately forestalled in the design of a protective order, it may be a factor in the access decision." *U.S. Steel Corp., 730 F.2d at 1468.* DS&M is currently prosecuting applications relating to the very patents at issue in this litigation. Attorneys who were to view Motorola's voluminous confidential information and then later prosecute the [*15] patents would have to constantly challenge the origin of every idea, every spark of genius. This would be a sisyphean task, for as soon as one idea would be stamped "untainted", another would come to mind. The level of introspection that would be required is simply too much to expect, no matter how intelligent, dedicated, or ethical the DS&M attorneys may be.

C. Hardship to Client

Courts have also considered the hardship to the client if counsel is disqualified or restricted in some manner. See *U.S. Steel Corp. v. United States, 730 F.2d 1465, 1469 (Fed. Cir. 1984)* ("forcing USS to rely on newly retained counsel would create an extreme and unnecessary hardship"); *Safe Flight Instrument Corp. v. Sundstrand Data Control, 682 F. Supp. 20, 22 (D. Del. 1988)* (denying access to Plaintiff's president would not unduly hamper plaintiff ability to assess litigation); In re Certain Amorphous Metal Alloys, No. 337-TA-143, at 3 (U.S.I.T.C. 1983) ("disqualification imposes too great a burden on respondents in this case"). ITC has urged the Court to consider the cost it will incur if DS&M's representation is limited in any way. See D.I. 86, at 110 (representations by Mr. [*16] Bove regarding ITC's concern regarding costs). ITC's hardship is certainly a factor to be balanced against Motorola's need to protect its confidential information, but it is just one factor.

It is important to note that DS&M has not been prosecuting these particular ITC patent applications for a long period of time. This is not a situation where a client decided that it would be efficient to retain trial counsel

who had prosecuted the particular patent in the past. In fact, DS&M did not become attorney of record for these particular patent applications until one week after the filing of Motorola's suit. This creates the appearance of a situation where a client felt it would be efficient to have trial counsel prosecute the patent application in the future. This creates far too great a risk that any efficiency will be to some extent the result of inadvertent use of confidential information.

This conflict was created by ITC after the initiation of litigation, and could have been avoided altogether by ITC. Under these circumstances, the Court will take hardship into account in fashioning its remedy, but does not consider the hardship severe enough to deny relief altogether.

[*17] **D. Timing of the Remedy**

In Amorphous Metal, the Commission recognized that a danger existed, but decided that there was not a present conflict, only a mere possibility of future conflict. Amorphous Metals at 8. As a result of this conclusion, the Commission chose not to deny access, but rather indicated that it would investigate in the future if the complainant could "show that subject matter directly related to the confidential information appeared in a patent application after release under a protective order." Amorphous Metal at 6 n.13. In effect, the Commission promised to remedy the injury after it occurred, while complainant was asking the Commission to prevent the injury from occurring. Given the voluminous information supplied to date by Motorola under the protective order, the ongoing dual role of the DS&M attorneys, and the need to closely guard confidential information in the patent area, this Court believes a conflict exists at the present time and will act to prevent the possibility of injury to Motorola.

**E. Scope of the Remedy**

All DS&M attorneys or employees who have received confidential information from Motorola under the protective order [*18] in this case shall not prosecute any patent application for ITC relating to the broad subject matter of the patents in suit during the pendency of this case and for one year after the conclusion of this litigation, including appeals.

This remedy is broad enough to protect Motorola's confidential information, yet seeks to minimize the hardship to both ITC and DS&M. The prohibition applies only to ITC patent applications that are the subject matter of this litigation, not all ITC patent applications. The prohibition applies only to patent prosecutions for ITC, not for all other clients. n5 Finally, there is a time limit on the prohibition similar to the limit requested by Motorola for the CDC attorneys. See D.I. 69.

> n5 The Court presumes that DS&M's ethical duty to its client, ITC, would prevent DS&M from prosecuting patent applications for other clients that are of similar subject matter as ITC's patents in this case. Therefore, Motorola's confidential information should not be threatened by any representation of a third party which DS&M may undertake.

[*19]

DS&M has represented that to date, only Mr. D'Amico has worked on patent application matters and then subsequently reviewed confidential information. See D'Amico Affidavit. Because he has had access to Motorola's confidential information, he is subject to the Court's prohibition. Going forward, DS&M shall set up a Chinese Wall to separate the ITC patent application attorneys from the Motorola litigation attorneys who have received confidential information. This shall ensure that, with the exception of Mr. D'Amico, ITC shall continue to receive the same services from the same DS&M attorneys that ITC has received in the past.

**ORDER**

NOW, THEREFORE, for all the reasons stated by the Court in its Memorandum Opinion of December 19, 1994, IT IS ORDERED that:

1. The protective order, Docket Item 35, shall be amended to provide that any Dickstein, Shapiro & Morin ("DS&M") attorneys who have received confidential information from Motorola under the protective order shall not prosecute any InterDigital Technology Corporation patent applications relating to the broad subject matter of the patents in suit during the pendency of this case and until one year after the conclusion [*20] of the present litigation, including appeals.

2. DS&M shall set up a Chinese wall to ensure that the Court's order is effectively enforced.

Joseph J. Longobardi, D.J.

12/19/94

LEXSEE 2007 U.S. DIST. LEXIS 424

R.R. DONNELLEY & SONS COMPANY, Plaintiff, v. QUARK, INC., CREO, INC., EASTMAN KODAK COMPANY, and KODAK GRAPHIC COMMUNICATIONS COMPANY, Defendants.

Civil Action No. 06-032-JJF

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2007 U.S. Dist. LEXIS 424

January 4, 2007, Decided

COUNSEL: [*1] For R.R. Donnelley & Sons Company, Plaintiff: Rodger Dallery Smith, II, LEAD ATTORNEY, Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE; Jack B. Blumenfeld, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

For Creo Inc., Defendant: Frederick L. Cottrell, III, LEAD ATTORNEY, Richards, Layton & Finger, Wilmington, DE; Alyssa M. Schwartz, Gregory Erich Stuhlman, Richards, Layton & Finger, Wilmington, DE; Amy Elizabeth Evans, Cross & Simon, LLC, Wilmington, DE; Brian M. Koide, Pro Hac Vice; Clyde Findley, Pro Hac Vice; David M. Schnorrenberg, Pro Hac Vice; Jeffrey D. Sanok, Pro Hac Vice; Nathaniel Grow, Pro Hac Vice; Rodger Dallery Smith, II, Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE.

For Eastman Kodak Company, Kodak Graphic Communications Company, Defendants: Frederick L. Cottrell, III, LEAD ATTORNEY, Richards, Layton & Finger, Wilmington, DE; Alyssa M. Schwartz, Gregory Erich Stuhlman, Richards, Layton & Finger, Wilmington, DE; Amy Elizabeth Evans, Cross & Simon, LLC, Wilmington, DE; Amy W. Ray, Pro Hac Vice; David M. Schnorrenberg, Pro Hac Vice; Rodger Dallery Smith, II, Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE.

For Creo Inc., Eastman Kodak [*2] Company, Kodak Graphic Communications Company, Counter Claimants: Amy Elizabeth Evans, Cross & Simon, LLC, Wilmington, DE.

For R.R. Donnelley & Sons Company, Counter Defendant: Rodger Dallery Smith, II, Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE.

JUDGES: Joseph J. Farnan, Jr., United States District Judge.

OPINION BY: Joseph J. Farnan, Jr.

OPINION:

MEMORANDUM ORDER

Pending before the Court is Plaintiff's Motion for Protective Order. (D.I. 35.). The parties have attempted to reach an agreement on a proposed protective order, but three issues remain in dispute: whether two of Plaintiffs' in-house employees should be granted access to information designated "Attorneys' Eyes Only;" the scope of the patent prosecution bar that will be imposed upon Plaintiff's outside counsel; and the scope of discovery that will be allowed. Plaintiff has submitted the pending Motion suggesting full access for its in-house employees, and a restricted patent prosecution bar. For the reasons discussed, the Court will grant in part and deny in part Plaintiff's Motion.

I. Whether Plaintiff's In-House Employees Should Have Access to Information Designated "Attorneys' Eyes Only."

A party's [*3] designation as "in-house counsel" cannot serve to automatically deny that party access to information deemed confidential. *U.S. Steel Corp. v. United States, 730 F.2d. 1465, 1467 (Fed. Cir. 1984)*. Rather, "[t]he factual circumstances surrounding each individual counsel's activities, association or relationship with a party . . . must govern any concern for inadvertent or accidental disclosure." Id. Specifically, the court should consider "whether the attorneys are involved in competitive decision making of the company and should examine the risks and safeguards surrounding inadvertent disclosure of the protected information." *Affymetrix, Inc. v. Illumina, Inc., 2005 U.S. Dist. LEXIS 15482, at *6-7 (D. Del., July 28, 2005)*.

Case 1:07-cv-00067-MPT    Document 32-2    Filed 04/19/2007    Page 10 of 11

Page 2
2007 U.S. Dist. LEXIS 424, *

In this case, one of the R.R. Donnelley employees for whom access is requested, Mr. Pasternak, is the company's Chief Patent Counsel, and the other, Mr. Theophilos, is the President of the Corporate Strategic Initiatives group. Plaintiff claims that both require access in order to be able to effectively "manage outside counsel and advise their client." (D.I. 35 at 4.) However, the risk of inadvertent disclosure cannot be overcome [*4] by the mere contention that access to confidential information is necessary for case management. *Intel Corp. v. VIA Tech., Inc., 198 F.R.D. 525, 528 (N.D. Ca. 2000)*. Thus, unless in-house counsel's lack of access would impede a party's ability to litigate through outside counsel, the relevant inquiry remains whether the employee in question "is in a position that creates a high risk of inadvertent disclosure." *Id.; Commissariat A L'Energie Atomique v. Dell Computer Corp., 2004 U.S. Dist. LEXIS 12782 (D. Del. 2004)*.

A. Mr. Pasternek

In the case of R.R. Donnelley's Chief Patent Counsel, Mr. Pasternak, n1 the balance weighs in favor of permitting his access to "Attorneys' Eyes Only" information. Mr. Pasternak has declared the role of Chief Patent Counsel is strictly to "supervise the legal decision-making related to R.R. Donnelley's intellectual property portfolio and its enforcement." (D.I. 35, Ex. C at 2.). Moreover, this position does not "report directly to any business person with direct responsibility for competitive decision-making." Id.

n1 In its reply brief, Plaintiff informs the Court that Mr. Pasternak has left its employ and that a replacement for him will be named as soon as possible. Provided that the new Chief Patent Counsel has substantively the same role as Mr. Pasternak, he or she will be permitted access pursuant to this Order.

[*5]

Generally, "unrebutted statements made by counsel asserting that he does not participate in competitive decisionmaking, which the court has no reason to doubt, form a reasonable basis to conclude that counsel is isolated from competitive decisionmaking." *Intel, 198 F.R.D. at 529*. Accordingly, Mr. Pasternek will be afforded access to the information in question. *Affymetrix, 2005 U.S. Dist. LEXIS 15482, at *7*.

B. Mr. Theophilos

In contrast to the Chief Patent Counsel, Mr. Theophilos, in his role as President of Corporate Strategic Initiatives, advises R.R. Donnelley "on company-wide business initiatives and opportunities for growth," serving in a supervisory role in "research and development and applications engineering and other strategic initiatives of R.R. Donnelley." (D.I. 35, Ex. B at 2.) This competitive decision-making is the sort of disclosure risk that weighs heavily against granting access. n2 *Motorola, Inc. v. Interdigital Tech. Corp., 1994 U.S. Dist. LEXIS 20714, at *10-11 (D. Del., Dec. 19, 1994)*. Furthermore, the only reason stated for allowing Mr. Theophilos access to attorneys' eyes only information is to enable [*6] him to manage outside counsel and advise R.R. Donnelley.

n2 Plaintiff argues that this factor is negated, or at least tempered, by the fact that the parties in this case are not direct competitors in the sale of software for variable digital printing. Plaintiff does not deny, however, that Defendants' trade secrets and other sensitive information could potentially be of value to Plaintiff.

The Court concludes that the reasons offered for access are insufficient to overcome the risk of inadvertent disclosure inherent in permitting access. In the case of Mr. Theophilos, who is routinely engaged in strategic and competitive decision-making, inadvertent disclosure is a sufficiently tangible and specific threat to Defendants' interests to merit the issuance of a protective order under Shingara. Accordingly, the Court will deny Plaintiff's motion with respect to Mr. Theophilos.

II. The Scope of the Prosecution Bar

Defendants argue that a broad protective order preventing the firm of Plaintiff's [*7] outside counsel from prosecuting any patents involving any aspect of "variable digital printing" is necessary to protect Defendants from economic injury. Defendants contend that such a protective order is especially necessary considering certain tactics used by Plaintiff's patent prosecution firm, McCracken & Frank. In particular, Defendants not that McCracken & Frank employ a technical specialist, Riyaz M. Asaria, who, according to Defendants, "poses a significant economic threat all by himself, as both an applicant of pending patent applications and a former RDD employee with questionable 'outside' credentials." (D.I. 38).

Plaintiff responded that McCracken & Frank will not have access to any sensitive material related to this litigation. Plaintiff further offered to amend its proffered Protective Order to permit access to confidential and attorneys' eyes only information only to "outside counsel employed by the parties with responsibility for this ac-

tion who have entered an appearance" in the litigation. (D.I. 39 at 2.)

The Court agrees with Plaintiff that the risk to Defendants' economic interests is not such as would justify placing such a broad, and potentially onerous, patent [*8] prosecution bar on Plaintiffs' counsel. Given Plaintiff's offer to amend the Protective Order to exclude McCracken & Frank from access to any confidential or Attorneys' Eyes Only information, there is no tangible risk of injury to Defendants, aside from the general threat of inadvertent misuse of discovered information.

A prosecution bar issued "without some tangible reason or good cause other than the general threat of inadvertent misuse of discovered materials is the exact type of overly broad and generalized fear rejected in Shingara . . . ." *AFP Advanced Food Prods. LLC v. Snyder's of Hanover Mfg., Inc., 2006 U.S. Dist. 426, at \*7 (E.D. Pa., Jan. 9, 2006)*. Accordingly, the Court concludes that the balance of the Shingara factors weighs against issuing such a broad protective order.

### III. The Scope Of Discovery

The Court will not limit discovery in this action to "systems and methods for processing imaging data before the data is actually printed by a press, e.g., software for processing or preparing variable printing data," as Defendant requests. (D.I. 38 at 1.) Plaintiff has been forthright regarding the type of discovery it intends to seek and the purposes [*9] for which it plans to seek that discovery. (D.I. 39 at 1-2.) If, during the course of discovery, Defendants encounter inappropriate, irrelevant or overbroad discovery requests from Plaintiff, they can file for an amendment to the Protective Order. Therefore, the Court will issue the protective order with the "software for" and "who have entered an appearance" language included.

NOW THEREFORE, IT IS HEREBY ORDERED that:

1. The parties shall, within **five (5) days** from the date of this Order, submit a Proposed Protective Order employing the "software for" and "who have entered an appearance" language and granting Thomas G. Pasternak access to Attorneys' Eyes Only information.

2. If Plaintiff wishes to substitute a different corporate officer for Thomas G. Pasternak in the Protective Order, Plaintiff shall submit a Declaration within **five (5) days** from the date of this Order affirming that the new officer performs substantially the same duties as Mr. Pasternak and is not involved in competitive decision-making before such substitution may be effected.

January 4, 2007

DATE

Joseph J. Farnan, Jr.

UNITED STATES DISTRICT JUDGE